COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Frank
Argued at Richmond, Virginia


MARY HELEN ANDREWS
                                                        OPINION BY
v.      Record No. 1964-09-4                    JUDGE ROBERT P. FRANK
                                                        AUGUST 3, 2010
MARGARET ANN CREACEY,
  BARBARA J. THOMPSON AND
  STEVEN M. ANDREWS, CO-GUARDIANS
  OF JOSEPH ANDREWS


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            R. Terrence Ney, Judge

        Mark Bodner for appellant.

        Jean Galloway Ball for appellees.


        Mary Helen Andrews, appellant (wife), contends the trial court erred in:  (1) awarding

Joseph Andrews, husband, an incapacitated adult, a divorce on the ground that his guardians

deemed a divorce to be in his best interest; (2) finding that husband failed to prove he had the

requisite intent to divorce wife prior to their separation; (3) refusing to admit wife's exhibit, an

application for veteran's benefits, which was completed by husband's daughter; (4) refusing to

credit wife for husband's transfer of $55,000 from a marital account into his personal account;

(5) refusing to award wife any of husband's pension; (6) refusing to award wife spousal support;

(7) admitting into evidence a report from the guardian *ad litem*; and (8) ordering wife to vacate the

marital residence.[1]  For the reasons stated, we affirm.

_____

        [1] The parties indicated at oral argument that the house has been sold and wife has vacated
the residence.  Therefore, this argument is moot and we need not address it.

I.  GROUNDS FOR DIVORCE

On April 4, 2005, Margaret, husband's daughter, filed a petition for appointment of limited guardian and limited conservator in Fairfax County Circuit Court because of her father's "physical frailties and mental infirmities of old age."  The petition alleged husband suffered from progressive dementia, thus requiring "permanent assistance to care for his physical and medical needs . . . ."

By amended order January 29, 2007, the court found husband to be incapacitated and appointed Margaret and Steven (one of husband's sons) as co-guardians to "attend to the personal affairs . . . and [to] make decisions regarding his support, care, health, safety . . . ."  The order directed that wife have visits and telephone contact with husband.  Barbara, another daughter, and Steven were appointed co-conservators to manage husband's estate and financial affairs.  The order declined to appoint wife as guardian or conservator, finding she was not qualified.  This order was not appealed.

On January 31, 2007, Margaret, as co-guardian of husband, filed a motion for permission to file complaint for divorce, contending a divorce was in husband's best interest.  The motion alleged that contact with wife upset husband and he suffered health problems related to continued contact with wife.  Husband's physician suggested terminating the visitations.  The motion further recited the financial need to sell the marital residence, which wife refused to do, to insure husband's proper care.  Such permission was granted by order entered May 10, 2007.[2] That order was not appealed.

The co-guardian filed a complaint for divorce on husband's behalf on December 23, 2008, alleging husband and wife "have lived separate and apart without cohabitation and without interruption for a period of time in excess of one year, having last lived together as husband and

---

[2] The order is not part of the record.

wife on or about November of 2005." The trial court heard evidence on August 4, 2009 and considered arguments of counsel.

The court entered a final decree of divorce on August 11, 2009, finding husband and wife have lived separate and apart without any cohabitation and without interruption for over one year, having last lived together as husband and wife on or about November 11, 2005, and that husband "formed the intent to remain permanently separate and apart on or about August of 2006."[3] The trial court, after considering conflicting evidence as to whether husband had an intent to be divorced at the time of separation, found that he did have that intent, indicating the guardian *ad litem's* testimony to be the most reliable.

The trial court further concluded:

> Pursuant to Virginia Code § 37.2-1010.D a guardian of an incapacitated person may seek a divorce for their ward, that evidence of the ward's wishes may be heard by the Court, but whether that is determinative of whether a ward intends to seek a divorce is a different question; that the guardians of a ward, under a best judgment standard of decision-making, can exercise any required intent to divorce on behalf of their ward.

At the hearing, in response to wife's argument that it is the intent of the parties to separate, not the judgment of the guardian, the trial court concluded the guardian could obtain a divorce when it determined it is in their ward's best interest to do so.

Wife argues, on appeal, the trial court erred in granting the divorce on the grounds that husband's co-guardian deemed a divorce to be in his best interest. She further contends there was insufficient evidence to prove that husband had an intent to divorce his wife prior to their separation. Essentially, wife argues that Code § 37.2-1020(D) only gives the guardian standing to bring a divorce on behalf of his ward. Code § 20-91(9)(a), she continues, sets forth the

---

[3] While the trial court referred to husband as the plaintiff, the party bringing the divorce action was Margaret, et al., co-guardians of husband.

grounds of divorce.  She maintains that the trial court erred in relying on the judgment of the guardian as to her ward's best interests, rather than determining whether husband intended to permanently separate from wife at the time of separation.

Our analysis must first address the interplay between Code § 37.2-1020 and Code § 20-91(9)(a).  In interpreting a statute, we endeavor "'to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.'"  Colbert v. Commonwealth, 47 Va. App. 390, 394, 624 S.E.2d 108, 110 (2006) (quoting Jones v. Rhea, 130 Va. 345, 372, 107 S.E. 814, 823 (1921)).  "'Statutes which have the same general or common purpose or are parts of the same general plan are . . . ordinarily considered as *in pari materia*.'" Lucy v. County of Albemarle, 258 Va. 118, 129, 516 S.E.2d 480, 485 (1999) (quoting Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957)).

> "Under the rule of statutory construction of statutes in pari materia, statutes are not to be considered as isolated fragments of law. . . . [T]hey should be so construed as to harmonize the general tenor or purport of the system and make the scheme consistent in all its parts and uniform in its operation, unless a different purpose is shown plainly or with irresistible clearness."

Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d 456, 462 (2007) (quoting Prillaman, 199 Va. at 405, 100 S.E.2d at 7).

Code § 37.2-1020 states in relevant part:

> C.  A guardian shall maintain sufficient contact with the incapacitated person to know of his capabilities, limitations, needs, and opportunities.  The guardian shall visit the incapacitated person as often as necessary.
>
> D.  A guardian shall be required to seek prior court authorization to change the incapacitated person's residence to another state, to terminate or consent to a termination of the person's parental rights, or to initiate a change in the person's marital status.

E. A guardian shall, to the extent feasible, encourage the incapacitated person to participate in decisions, to act on his own behalf, and to develop or regain the capacity to manage personal affairs. A guardian, in making decisions, shall consider the expressed desires and personal values of the incapacitated person to the extent known and shall otherwise act in the incapacitated person's best interest and exercise reasonable care, diligence, and prudence.

Code § 20-91(9)(a) provides for a divorce "when the husband and wife have lived separate and apart without any cohabitation and without interruption for one year."

The Supreme Court of Virginia, in <u>Hooker v. Hooker</u>, 215 Va. 415, 211 S.E.2d 34 (1975), held:

> Where both parties are mentally competent as in the present case, we hold that, as a prerequisite for a divorce under Code § 20-91(9), there must be proof of an intention on the part of at least one of the parties to discontinue permanently the marital cohabitation, followed by physical separation for the statutory period.
>
> We believe that the words "lived separate and apart" in Code § 20-91(9) mean more than mere physical separation. In our view the General Assembly intended that the separation be coupled with an intention on the part of at least one of the parties to live separate and apart permanently, and that this intention must be shown to have been present at the beginning of the uninterrupted two year period of living separate and apart without any cohabitation.

<u>Id.</u> at 417, 211 S.E.2d at 36.

We need not determine whether a divorce can be granted based upon the guardian's determination that it is in the ward's best interest to be divorced since the trial court made an alternate finding that husband "formed the intent to remain permanently separate and apart . . ." from wife. <u>See generally</u> <u>Chretien v. Chretien</u>, 53 Va. App. 200, 206-07, 670 S.E.2d 45, 48-49 (2008).

Thus, we only need to consider whether the evidence supports the trial court's finding of intent. Intent is a question to be determined by the fact finder. <u>Cirrito v. Cirrito</u>, 44 Va. App. 287, 305, 605 S.E.2d 268, 276 (2004). We give "great deference" to the trial court's factual

findings and view the facts in the light most favorable to the prevailing party below. Blackson v. Blackson, 40 Va. App. 507, 517, 579 S.E.2d 704, 709 (2003). Pursuant to Code § 8.01-680, a factual determination cannot be reversed on appeal unless "plainly wrong or without evidence to support it." Congdon v. Congdon, 40 Va. App. 255, 261, 578 S.E.2d 833, 836 (2003).

Wife contends the trial court's reliance on the guardian *ad litem's* testimony and report dated October 24, 2006, which was filed in the guardianship proceeding, was in error. The report was offered solely for husband's statement to the guardian *ad litem* that he wanted a divorce from wife. Counsel for wife acknowledged the limited purpose of the report. However, the trial court admitted the entire report and indicated the report was admitted only for the one sentence, "[a]nd that's what I'm relying upon." The report[4] indicated the guardian *ad litem* personally interviewed husband on August 14, 2006 in South Carolina. Husband was able to read the petition requesting the appointment of a guardian. Husband related his desire to be divorced, citing an assault by one of his sons while his wife witnessed the event and "laughed about it." Husband expressed his desire for two of his daughters to be appointed his guardians, acknowledging he needed assistance in managing his affairs. The guardian *ad litem* concluded husband is "unable to live without assistance" and that he is "incapable of evaluating and responding to situations involving the substantive issues of life, such as financial . . . decisions . . . . He appears to be able to be involved in the decision to an extent and his wishes regarding his living situation should be followed."

---

[4] While wife on appeal challenges the admissibility of the guardian *ad litem's* report, we consider it in determining the sufficiency of the evidence. See Lunsford v. Commonwealth, 55 Va. App. 59, 62, 683 S.E.2d 831, 833 (2009) ("When determining the sufficiency of the evidence, we consider all admitted evidence, including the evidence appellant here asserts was inadmissible.").

Attached to the guardian *ad litem's* report was a letter from husband, dated August 10, 2006, stating *inter alia*, "I need to divorce my wife, sell my house and live in safety and peace, there is no peace or safety . . . ." [5]

At the divorce hearing, the guardian *ad litem* testified that when he interviewed husband in South Carolina, husband seemed to go "along with whatever is represented, but if you scratch beneath the surface, there wasn't a whole lot of understanding." He further observed husband's mental state at the guardianship proceeding as "pretty similar" to his condition at the August 2006 interview in South Carolina. Husband had a fairly accurate view of long-term memory, but not short-term memory.

There was conflicting testimony as to husband's intent to separate. Wife's sister, Dorothy, testified that when she visited with husband in September of 2007, husband was glad to see wife, holding hands and kissing wife before he left. He said he did not want to leave. On another occasion, Dorothy heard husband tell wife he did not want a divorce. Interestingly, when asked about husband's demeanor, Dorothy never indicated he was mentally impaired.

Another daughter, Mary Susan, testified she was present at the same visitation between husband and wife, confirming Dorothy's testimony as to the relationship between husband and wife. She never heard husband express any desire to be separated from wife. To the contrary, husband, in response to Margaret's question if he wanted a divorce, replied, "what do I need a divorce for?" Again, when asked about husband's demeanor, the daughter never indicated any mental or cognitive incapacity.

Wife testified that the day before the divorce hearing, husband told her he did not want a divorce. On other occasions he expressed the same thought. The trial court discounted this testimony and resolved the conflict in the evidence in favor of the guardian *ad litem's* testimony.

---

[5] The letter was offered for this sentence only.

The credibility of witnesses and the weight to be accorded their testimony is a matter within the sole province of the finder of fact. Courembis v. Courembis, 43 Va. App. 18, 36, 595 S.E.2d 505, 514 (2004).

Wife argues the guardian *ad litem's* testimony is internally inconsistent and, therefore, the trial court should have totally rejected it. She points to the guardian *ad litem's* testimony that suggested husband's will could be easily overcome and he exhibited little understanding.

Wife's argument is based on a false premise that husband has no cognitive ability to form an intent to separate or to consider whether he wants to remain married or to separate and divorce wife. To the contrary, in the guardianship proceeding, the presiding judge found husband retained "some cognitive function" and "can articulate desires," but is unable to manage his affairs.

The evidence belies wife's position. The guardian *ad litem* interviewed husband in August of 2006 and determined husband was able to express his desire to obtain a divorce. Husband was able to read the various documents relating to the guardianship proceeding. He was able to relate his reasons for his desire to separate. He articulated the need for the appointment of a fiduciary and confessed his need for assistance.

The appointment of a guardian/conservator, under Code § 37.2-1000 *et seq*. and a determination that the ward is incapacitated does not, in itself, mean the ward is incapable of making any decisions. In fact, Code § 37.2-1020(E) requires the guardian, to the extent feasible, to encourage the ward to participate in decisions. The guardian shall consider the expressed desires and personal values of the ward. Thus, the legislature envisioned that some incapacitated persons have the ability to make decisions and to consider their own needs and interests.

The trial court found the parties last lived together as husband and wife on or about November 11, 2005 and husband formed an intent to remain permanently separate and apart on

or about August of 2006. The evidence supports this finding, and we will not disturb it on appeal. Congdon, 40 Va. App. at 261, 578 S.E.2d at 836. As set forth above, husband told the guardian *ad litem* at the August 14, 2006 interview in South Carolina he wanted a divorce. Husband's letter dated August 10, 2006 expresses the same desire. Since the divorce complaint was filed on December 23, 2008, the evidence proved the parties lived separate and apart for over one year, after husband's intent to remain permanently separated and prior to the filing of the divorce complaint.

While wife argues husband did not prove an intent to separate on November 11, 2005 when he was discharged from the hospital, the trial court did not find the intent to separate on that date. Rather, the trial court determined the intent arose in August of 2006, although the parties physically separated in November of 2005. Wife cites no law, nor can we find any, that requires the intent to separate must co-exist with the actual separation. To the contrary, the facts in Hooker dictate otherwise. In that case, Mr. Hooker went to South Vietnam as a civilian employee in August 1970. Hooker, 215 Va. at 416, 211 S.E.2d at 36. In May 1972, he wrote his attorney to obtain a divorce on his behalf. Id. The Supreme Court of Virginia concluded, prior to the 1972 letter to his attorney, Hooker had expressed no intent to separate from his wife. Id. at 417, 211 S.E.2d at 36. The intention to separate "must be shown to have been present at the beginning of the uninterrupted [one year] period of living separate and apart without any cohabitation." Id.

Wife further contends, because of husband's incapacity, he was not able to form the requisite intent to separate. However, the trial court made a factual finding husband formed the intent to remain permanently separate and apart. The factual finding, by necessity, implies husband had the mental capacity, prior to incompetency, to form such an intent. Wife, at the divorce hearing, argued that when husband expressed his desire in August 2006, he was not

- 9 -

competent to form an intent to permanently separate, thus placing that issue squarely before the trial court. It should be noted that the intent to separate occurred in August 2006. Husband was found incapacitated by order entered January 29, 2007.

Wife further argues the co-guardians did not prove that husband, even if he initially had such an intent to separate, continued to entertain that intent throughout the period of separation because of his incapacity. Wife cites Hooker to support this contention, referring to language in Hooker that describes the statutory separation period a "salutary period of contemplation . . . during which the parties have an opportunity for reconciliation." Id. However, the sole issue in Hooker was that the intent to separate must exist in order to establish the commencement of the separation period.

Further, Code § 20-91(9)(a) clearly refutes wife's position:

> nor shall it be a bar that either party has been adjudged insane, either before or after such separation has commenced, but at the expiration of one year or six months, whichever is applicable, from the commencement of such separation, the grounds for divorce shall be deemed to be complete[.]

The legislative intent, under the facts of this case, is clear. Once one of the parties entertained an intent to separate, and the parties have lived separate and apart without any cohabitation and without interruption for one year, the grounds of divorce are complete. It is not relevant whether or not husband, in this case, remained competent during the one-year period. We are aware of no evidence that husband changed his mind or abandoned his intent to separate. It is uncontroverted that the parties did remain separate and apart for a period exceeding one year.

We therefore conclude that the evidence supports the trial court's finding that husband formed an intent to remain permanently separate and apart from wife on or about August 2006 and properly granted husband a divorce under Code § 20-91(9)(a).

- 10 -

ADMISSIBILITY

Appellant contends the trial court made two evidentiary errors:  first, in not admitting a

Veteran's Administration document filled out by Barbara, husband's co-guardian; and second,

by admitting the guardian *ad litem's* report that contained multiple hearsay.

> "'The admissibility of evidence is within the broad discretion of
> the trial court, and [its ruling thereon] will not be disturbed on
> appeal in the absence of an abuse of discretion.'" Jones v.
> Commonwealth, 38 Va. App. 231, 236, 563 S.E.2d 364, 366
> (2002) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371
> S.E.2d 838, 842 (1988)).  However, "a trial court 'by definition
> abuses its discretion when it makes an error of law.'" Shooltz v.
> Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998)
> (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).  "In
> determining whether the trial court made an error of law, 'we
> review the trial court's statutory interpretations and legal
> conclusions *de novo*.'" Rollins v. Commonwealth, 37 Va. App.
> 73, 79, 554 S.E.2d 99, 102 (2001) (quoting Timbers v.
> Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236
> (1998)).

Auer v. Commonwealth, 46 Va. App. 637, 643, 621 S.E.2d 140, 142-43 (2005).

Veteran's Administration Form

As indicated in other sections of this opinion, the issue of whether husband had the

mental capacity to form an intent to divorce was contested.  Wife offered the Veteran's

Administration form to prove husband had no such capacity because he was unable to fill out

that form.  In explaining why the exhibit was relevant, wife indicated it would show "who

completed the forms and why."

On cross-examination, Barbara, the co-guardian, testified she did, in fact, fill out the

forms at husband's request.  Thus, through cross-examination, wife elicited the identical facts

from Barbara as she would have from the admission of the form.  The trial court allowed Barbara

to identify the Veteran's Administration form, although it was not admitted into evidence.

- 11 -

We conclude that, if the trial court erred in refusing to admit the Veteran's Administration form, it was harmless error.

In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678.

> "If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the [judgment] cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

Also relevant to the harmless error analysis is whether the evidence admitted in error is merely "cumulative" of other, undisputed evidence. Brecht v. Abrahamson, 507 U.S. 619, 639 (1993). "Cumulative testimony is repetitive testimony that restates what has been said already and adds nothing to it. It is testimony of the same kind and character as that already given." Massey v. Commonwealth, 230 Va. 436, 442, 337 S.E.2d 754, 758 (1985). Here, it is undisputed that Barbara filled out the Veteran's Administration form.

The proffered Veteran's Administration form, offered to show husband did not fill out the form, simply reiterated Barbara's testimony that she did, in fact, complete the form. We note that while wife also offered the exhibit to prove why husband did not complete the form, the form could not prove husband was incompetent, only that he did not fill it out. We therefore find error, if any, was harmless.[6]

---

[6] While husband did not argue harmless error in his brief, we are obligated to address harmless error.

<u>Report of the Guardian *ad Litem*</u>

Wife next argues the trial court erred in admitting the guardian *ad litem's* report that was originally submitted in the earlier guardianship proceeding.[7]

At the divorce hearing, wife's counsel cross-examined Barbara on husband's capacity to form an intent to divorce. Husband's counsel then offered husband's guardian *ad litem* in the guardianship proceedings, as a witness to testify as to husband's intent. Counsel proffered Exhibit 3 that was the guardian *ad litem's* report. He also proffered the guardian *ad litem* would testify that husband told him he wanted a divorce. The guardian *ad litem* was present in court at the divorce hearing. Wife objected to the introduction of the report, contending the report contained multiple hearsay.

Wife's counsel then examined the guardian *ad litem* regarding husband's statement of intent to divorce, particularly husband's capacity to form such an intent, relying on the statements contained in the guardian *ad litem's* report. Wife did not object to the guardian *ad litem's* testimony and in fact questioned him as to husband's statements made to the guardian *ad litem*.

---

Code § 8.01-678 makes "harmless error review required in *all* cases." <u>Ferguson v. Commonwealth</u>, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (emphasis in original and text in parenthetical to statutory citation); <u>Walker v. Commonwealth</u>, 144 Va. 648, 652, 131 S.E. 230, 231 (1926) (holding that the harmless error statute "puts a limitation on the powers of this court to reverse the judgment of the trial court – a limitation which we must consider on every application for an appeal and on the hearing of every case submitted to our judgment").

<u>Tynes v. Commonwealth</u>, 49 Va. App. 17, 23 n.3, 635 S.E.2d 688, 690 n.3 (2006).

[7] Wife's only citation for her hearsay argument is § 18-2, Charles E. Friend, <u>The Law of Evidence in Virginia</u> (5th ed. 2001). This section, entitled Reasons for the Hearsay Rule, offers no substantive law on her specific hearsay argument, only the rationale why hearsay is not admissible.

Only one sentence of the report was offered and received by the court, "During our meeting [August 14, 2006], Mr. Andrews expressed his desire to be divorced from his wife and the fact that two of his male children had been physically abusive to him." The trial court indicated, "She's only offering for that particular sentence." While the trial court also said it received the "entire report," wife's counsel acknowledged the report was not admitted in full. The trial court responded, "It was admitted for that sentence, the one I just read."[8]

From the totality of the record, the guardian *ad litem's* report was only admitted for that one sentence.

Appended to the guardian *ad litem's* report was a letter dated August 10, 2006, signed by husband which stated in part, "I need to divorce my wife, sell my home and live in safety and peace." Wife argues the report was inadmissible because it contained double hearsay.

Hearsay is "[a] statement other than one made by the declarant while testifying at trial – offered in evidence to prove the truth of the matter asserted." Black's Law Dictionary 649 (5th ed. 1979).

> "Whether an extrajudicial statement is hearsay depends upon the purpose for which it is offered and received into evidence. If the statement is received to prove the truth [or falsity] of its content, then it is hearsay and, in order to be admissible, must come within one of the many established exceptions to the general prohibition against admitting hearsay."

Brown v. Commonwealth, 25 Va. App. 171, 177, 487 S.E.2d 248, 251 (1997) (*en banc*) (quoting Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992)). "As a general rule, hearsay evidence is incompetent and inadmissible," and "the party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility." Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992).

---

[8] The sentence referred to was husband's statement expressing his desire to be divorced.

- 14 -

The "state-of-mind" exception is one of these established hearsay exceptions. Clay v.

Commonwealth, 33 Va. App. 96, 105-06, 531 S.E.2d 623, 627 (2000) (*en banc*), aff'd, 262 Va.

253, 546 S.E.2d 728 (2001).  If the declarant's state of mind is relevant to the case, then the

declarations are admissible under this exception if they meet two additional conditions:

> 1.  The statement must refer to a presently existing state of mind.
>     Although the mental state o[r] emotion must exist at the time of
>     the declaration, it may relate to matters occurring in the past or
>     in the future;
>
> 2.  There must be no obvious indication of falsification or
>     contrivance[.]

Id. at 105 n.4, 531 S.E.2d at 627 n.4; see also Charles E. Friend, The Law of Evidence in

Virginia § 18-18, at 789 (6th ed. 2003).

Here, husband's statement expressed a presently existing state of mind, i.e., his intent to

divorce.  Any conflict as to whether his statement was the product of falsification or contrivance

was resolved by the fact finder who accepted those statements as true.  Husband's state of mind

was central to the proof of divorce and therefore highly relevant.  "Intent in fact is the purpose

formed in a person's mind and may be, and frequently is, shown by circumstances.  It is a state

of mind which may be shown by a person's conduct or by his statements."  Hargrave v.

Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974).

We conclude that the trial court did not err in admitting the guardian *ad litem's* report that

was offered for the limited purpose of proving husband's intent to divorce wife.  The guardian *ad

litem*, on cross-examination, testified without objection as to husband's statements to him.

Therefore, even if the trial court erred in admitting that portion of the report, it was harmless, see

Code § 8.01-678; Clay, 262 Va. at 260, 546 S.E.2d at 731-32, and cumulative, Abrahamson, 507 U.S. at 639.[9]

EQUITABLE DISTRIBUTION

$55,000

Wife argues that the trial court erred in failing to make a monetary award or to give her credit for the $55,000 husband withdrew from marital funds and transferred into his own account in December 2005. Husband responds that he removed these funds from the joint account when he learned that his son was stealing from the account. He contends he properly used the remaining funds for both his and wife's needs.

Wife makes two arguments: First, she contends that the trial court failed to consider the statutory factors set forth in Code § 20-107.3(E). Next, she argues that when making the award, the trial court erroneously relied upon a previous ruling that the guardianship court never made.

In contending the trial court failed to consider the factors set forth in Code § 20-107.3(E), wife claims the trial court ignored the rights and interests of the parties in the $55,000, the length of marriage, wife's non-monetary contributions, and wife's financial needs.

However, the record belies these assertions. Prior to its equitable distribution ruling, the trial court reviewed and made factual findings as to each of the eleven factors of Code § 20-107.3(E).

The trial court indicated it further considered:

> The use and expenditure of all marital property by the parties for a non-marital separate person [sic] for the dissipation of such funds: That will be addressed separately with regard to the specifics of the equitable distribution.

---

[9] As previously stated, we are obligated to address harmless error despite the absence of such argument by appellee. Tynes, 49 Va. App. at 23 n.3, 635 S.E.2d at 690 n.3.

Code § 20-107.3, which governs awards of equitable distribution, "is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse." Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987). "Where an equitable distribution is appropriate, then all of the provisions of Code § 20-107.3 must be followed." Artis v. Artis, 4 Va. App. 132, 136, 354 S.E.2d 812, 814 (1987).

On appeal, "[a] decision regarding equitable distribution rests within the sound discretion of the trial court and will not be disturbed unless it is plainly wrong or without evidence to support it." Holden v. Holden, 31 Va. App. 24, 26, 520 S.E.2d 842, 844 (1999) (citing McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994)). "Unless it appears from the record that the trial judge has not considered or has misapplied one of the statutory mandates, this Court will not reverse on appeal." Id. at 27, 520 S.E.2d at 844. Wife has not presented to us any basis for concluding the trial court abused its discretion in fashioning the equitable distribution award. See Kaufman v. Kaufman, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988).

The trial court had ample evidence to determine that wife was not entitled to contribution for the funds husband withdrew from the joint marital account.

At the divorce hearing, the trial court heard testimony from husband's daughter that husband used the money to pay his attorney's fees, the home equity line of credit, homeowner's insurance for the marital home where wife resided, and bills wife sent him for her living expenses. The trial court also had before it the transcript from the proceeding to appoint a guardian/conservator that described how two of the couples' sons took advantage of their parents and, in particular, how one son stole money from them. The trial court had ample evidence to determine that wife was not entitled to a credit or to an award for these funds.

- 17 -

Here, evidence indicated the parties' son was stealing money from them. This testimony was corroborated by testimony and factual findings in previous proceedings. Further, the daughter explained that while her father was protecting the marital funds by transferring them to his own account, he was not using the funds solely for his own benefit. Husband made payments on the equity line of credit on the marital residence, paid the homeowner's insurance, and paid bills associated with the home sent to him by wife. Additionally, the trial court fully considered the factors in Code § 20-107.3 in its determination that wife was not entitled to an award based on husband's withdrawing funds from the marital account.

Regarding wife's second contention, the trial court stated that it would not disturb a previous ruling of the guardianship court that there was no improper use of the $55,000 of marital funds by husband. We agree with wife that there was no such finding made previously by the guardianship judge.

In relying on the previous ruling that husband did not improperly make use of the funds, the trial court essentially ruled that husband did not commit waste. However, wife does not argue husband committed waste. "Dissipation occurs 'where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.'" Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990) (quoting Hellwig v. Hellwig, 426 N.E.2d 1087, 1094 (Ill. Ct. App. 1981)). "The funds necessarily must be considered marital assets held by the party guilty of waste. The trial judge then may consider that one party has wasted assets as a factor when the judge determines the amount of the award." Booth v. Booth, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988).

To the extent that wife contends the trial court erred in taking into consideration a ruling that husband did not commit marital waste, her contention fails. Although the trial court

erroneously believed the guardianship trial judge found there was no improper use of the funds, any reliance by the trial court upon this ruling is irrelevant because wife does not argue husband committed waste.

<u>Husband's Civil Service Pension</u>

Wife next argues that the court erred in not awarding her a share of husband's civil service pension.[10] She claims that because it was earned during the course of their very long marriage, she is entitled to a share of the pension.

Again, we find wife has not presented any basis for us to conclude the trial court abused its discretion in fashioning the equitable distribution award. <u>Kaufman</u>, 7 Va. App. at 499, 375 S.E.2d at 380.

The trial court reviewed an opinion letter from wife's suit for separate maintenance that clearly illustrated the parties' relative financial positions. The opinion letter, issued November 9, 2007, stated that husband's monthly income at that time was marginally higher than his expenses, not including nearly $75,000 in outstanding bills. Additionally, the trial court heard testimony from husband's daughter that husband paid the home equity line of credit, homeowner's insurance for the marital home where wife resided, and the bills wife sent him for her living expenses.

In not awarding wife any share of husband's pension, the trial court ruled that the pension, which the trial court characterized as "*de minimus*," barely covered his full-time medical expenses.[11]

---

[10] Neither party challenges that the pension is marital property.

[11] The parties' arguments are limited to whether the court abused its discretion in making the equitable distribution award. They do not contend the trial court failed to consider all of the statutory factors in Code § 20-107.3.

The trial court concluded that husband "needs what little income he has . . . is almost *de minimus* for his on-going full-time medical care." It is apparent from the record that neither party has sufficient income to provide for their basic needs.

For the foregoing reasons, we affirm the trial court's award of equitable distribution regarding husband's pension.

SPOUSAL SUPPORT

Wife argues the trial court abused its discretion in not awarding her spousal support. Wife also contends the trial court erred in not considering the factors enumerated in Code § 20-107.1(E), not providing written findings identifying those factors that support its determination as required by Code § 20-107.1(F), and requiring wife to invade the principal of her estate and therefore depleting the only asset she received from the equitable distribution award.

We first address whether the trial court erred in not awarding any spousal support to wife. "In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support. Accordingly, our review is limited to determining whether the trial court clearly abused its discretion." Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005) (citations omitted).

At the time of the divorce hearing, husband was ninety-three years old and wife was eighty-eight years old. They had been married for sixty-four years. Husband had the following monthly income: $1,920.41 government pension; $724 social security, and $6 VA benefits for a total monthly income of $2,650.41. The social security and VA payments are paid directly to the nursing home for husband's maintenance. From the monthly pension, husband pays health insurance for himself. A portion of husband's care is paid by Medicaid. The total monthly cost of the nursing home is $2,480.06, and the balance due as of June 9, 2009 was $2,508.60.

Wife received, monthly, $693 social security and SSI, $45 food stamps, and has Medicare and Medicaid benefits.

Other than an equity line balance of $19,000, there is no testimony of any other of wife's debts. Wife did not present an expense statement nor offer evidence of her needs. There was no evidence of housing expenses, utilities, food, insurance, other household expenses, or medical expenses. Thus, we can only speculate as to wife's needs. "A party seeking spousal support bears the burden of proving all facts necessary for an award including evidence of financial need . . . ." Robbins v. Robbins, 48 Va. App. 466, 484, 632 S.E.2d 615, 624 (2006). Here, wife failed to do so.

Wife next contends the trial court erred in not considering the factors enumerated in Code § 20-107.1(E) and in not providing written findings identifying those factors that support its determination pursuant to Code § 20-107.1(F). When making an award of spousal support, the trial court must consider all the factors enumerated in Code § 20-107.1(E) and set forth findings or conclusions identifying the statutory factors supporting that award. Robinson v. Robinson, 54 Va. App. 87, 91, 675 S.E.2d 873, 874 (2009); Code § 20-107.1(F).

Pursuant to Rule 5A:20(c), appellant designated her written exception to the final decree where she preserved these issues for appeal.[12] Her exception stated:

> [F]ailure of Court to award defendant Mary Helen Andrews any spousal support despite husband's income in an amount 400% greater than her own; her reliance on Social Security and SSI and food stamps for subsistence after 64 plus [sic] year marriage; Court's expectation that defendant will have funds from distribution of proceeds from sale of marital residence for support.
>
> And all other reasons stated in open Court on the record of this case.

---

[12] Rule 5:A20(c) provided that the opening brief of appellant must contain "a statement of the questions presented with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each question was preserved in the trial court."

We find that this sole statement noting her general exception to spousal support is not sufficient to satisfy the requirements of Rule 5A:18.[13]

Rule 5A:18 is clear that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."[14]  Indeed, "[i]n order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'"  McDuffie v. Commonwealth, 49 Va. App. 170, 177, 638 S.E.2d 139, 142 (2006) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986)).  The purpose of the rule is to ensure that any perceived error by the trial court is "promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary. . . . Errors can usually be corrected in the trial court, particularly in a bench trial, without the necessity of appeal."  Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989).  If a party fails to timely and specifically object, she waives her argument on appeal.  Arrington v. Commonwealth, 53 Va. App. 635, 674 S.E.2d 554 (2009).

Wife has clearly raised these arguments for the first time on appeal.  The general written exception propounded by appellant was insufficient to alert the trial court that she was objecting to the court's failure to consider the factors enumerated in Code § 20-107.1(E) and (F).  Therefore, these arguments will not be considered here.

---

[13] While appellant stated she was relying on statements made in open court to preserve this issue for appeal, she did not designate any other pages of the joint appendix as to where she preserved these issues.  See Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) ("We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief.").

[14] Rule 5A:18 was amended effective July 1, 2010 to state in relevant part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated with reasonable certainty at the time of the ruling . . . ."

Wife acknowledges she did not raise the written findings argument below, but contends the ends of justice exception to Rule 5A:18 applies. We disagree.

"Application of the ends of justice exception requires proof of an error that was "clear, substantial and material." Brown, 8 Va. App. at 132, 380 S.E.2d at 11. The record "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). "However, some procedures are so crucial that a court's failure to adhere to them constitutes error that is clear, substantial and material even in the absence of affirmative proof of error in the result." Herring v. Herring, 33 Va. App. 281, 287, 532 S.E.2d 923, 927 (2000). Such is not the case here. It is obvious from the record that neither party had sufficient income to support themselves and that the only asset available to generate income for their maintenance was the marital home. We conclude therefore that the trial court's failure to make written findings was not "clear, substantial and material." Therefore, this issue is waived.[15]

Finally, wife argues the trial court erred in requiring her to deplete her only asset received pursuant to the equitable distribution award. Rule 5A:20(c) requires us to find that the issue is waived because this argument is not part of appellant's questions presented. See Winston v. Commonwealth, 51 Va. App. 74, 82, 654 S.E.2d 340, 345 (2007) (holding that because an appellant did not include an argument in his questions presented, the Court would not address it on appeal); see also Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (declining to consider an issue on appeal because it was not "expressly stated" in the questions presented). The only issue raised in wife's question presented is whether the trial court abused its discretion in refusing to award wife spousal support based

---

[15] Wife never argued we should invoke the ends of justice exception to her argument regarding Code § 20-107.1(E). We will not consider such an argument *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

upon wife's income and the length of the marriage. This question is limited to the propriety of not awarding support and does not address whether the court erred in requiring wife to deplete her only asset in order to support herself.

We find that this failure to comply with Rule 5A:20 is significant. <u>Jay v. Commonwealth</u>, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008). Because appellant waived this issue, we will not consider it on appeal.

We, therefore, conclude the trial court did not abuse its discretion in failing to award spousal support to wife.

APPELLATE ATTORNEY'S FEES

Husband asks for an award of fees and costs for this appeal. We decline to do so.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

<u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon consideration of the record, we find "the litigation addressed appropriate and substantial issues . . . ." <u>Estate of Hackler v. Hackler</u>, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004).

CONCLUSION

For the foregoing reasons, we find the trial court did not err. In addition, we decline to make an award of appellate attorney's fees to husband.

Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>