COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Kelsey and Alston

JAMES ALLEN SPAIN

v.      Record No. 2423-10-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROSSIE D. ALSTON, JR.
FEBRUARY 28, 2012

FROM THE CIRCUIT COURT OF PAGE COUNTY
James V. Lane, Judge

(H. Webb Hudson, Jr., on brief), for appellant.  Appellant
submitting on brief.

(Kenneth T. Cuccinelli, II, Attorney General; Susan M. Harris,
Assistant Attorney General, on brief), for appellee.  Appellee
submitting on brief.

James Allen Spain (appellant) appeals his conviction and sentence for grand larceny by

embezzlement under Code § 18.2-111.  Appellant assigns three errors to the decision below.

First, appellant contends that the trial court erred in finding the evidence sufficient to convict

appellant of grand larceny by embezzlement.  Second, appellant asserts that his constitutional

rights were violated when a witness' testimony about a phone conversation allowed the jury to

inappropriately infer that appellant was incarcerated prior to trial.  In this same assignment of

error, appellant further claims that the trial court abused its discretion by failing to declare a

mistrial, upon its own motion, or in failing to grant the motion to set aside the jury's verdict due

to this alleged constitutional violation.  And third, appellant argues that "the trial court erred in

sentencing upon its finding that appellant had violated the conditions of the suspension of his

_____
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

sentences and supervised probation." For the reasons that follow, we affirm appellant's conviction and sentence.

## BACKGROUND[1]

In June 2009, appellant had multiple phone conversations with John Click, one of the owners of Stanley Auto Max, about purchasing a vehicle. During these conversations, appellant told Mr. Click that appellant needed a car for his girlfriend to get to work in Massanutten. On June 27, 2009, appellant and his girlfriend visited Stanley Auto Max, which Mr. Click owned and operated with his wife, Mary Click. Appellant walked around the lot with Mr. Click and eventually chose a 1992 Isuzu Trooper. Mr. Click and appellant negotiated and agreed on $995 as the purchase price for the truck. With a processing fee of $125 for transferring the title, the total purchase price for the vehicle came to $1,120. Mrs. Click filled out all legal documents pertaining to the sale of the truck using only appellant's girlfriend's name as the purchaser, at appellant's direction.

Mr. Click allowed appellant and his girlfriend to drive the car from the lot without any exchange of money because appellant stated that they desperately needed the car. As a condition of letting them leave, Mr. Click required appellant to return to the lot on July 1, 2009, and to make a payment of $150 on that date. Appellant agreed to do so and also to make a $50 payment every two weeks thereafter. In return, Mr. Click promised to process the new title on July 1 and "take care of" the inspection sticker that expired that day. The Clicks and appellant acknowledged at trial that the Clicks never perfected a lien on the vehicle, nor modified the title from its original form to reflect the transaction with appellant and his wife.

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

On July 1, 2009, neither appellant nor his wife[2] returned to the dealership. Neither of them called the Clicks to discuss payment on that date or during the following week. On July 7, 2009, Mr. Click called appellant. Appellant's wife answered the phone and promised that she and appellant would come to the dealership to pay the Clicks. Mr. Click testified at trial that neither appellant nor his wife returned to the dealership at any time, nor did either of them remit any payment for the truck. By happenstance, on July 12, 2009, Mr. Click saw appellant and appellant's wife driving the truck and followed them. When they parked the truck in appellant's mother's driveway, Mr. Click got out of his car and asked appellant about the payments for the truck. Appellant explained that he was having financial difficulties but said he would come to the dealership to pay Mr. Click.

Between July 12 and July 18, once again neither appellant nor his wife remitted payments or went to the dealership. On July 18, 2009, Mr. Click saw the truck again and noticed that the wheels had been painted bright red. By the time he was able to turn his car around to follow the truck, the truck was gone.

On July 21, 2009, appellant called Anthony Painter, a tow truck driver, inquiring as to the cost for towing a truck to a nearby scrap metal yard. After agreeing to the price, appellant requested that Painter come to appellant's residence and tow the truck to the scrap metal yard. Painter complied and followed the normal procedure of weighing and unloading the truck at the scrap metal yard. Painter testified that appellant and his wife were both present, and appellant paid Painter the towing fee from the proceeds he received from the scrap metal yard in exchange for the truck.

---

[2] On June 30, 2009, appellant and his girlfriend were married.

Brian Leary, the employee working the scales at the scrap metal yard, verified that he wrote appellant's wife's name on the receipt but could not recall at trial who he paid or spoke to that day. Leary paid $175 for the truck, less $52.50 for the towing and tire disposal fees.

A few months later, Mr. Click attempted to put appellant's name on a repossession list with Painter's towing company. Painter told Mr. Click that Painter had towed the truck to the scrap metal yard at appellant's request.

In March 2010, pursuant to an investigation that the Clicks initiated, Deputy Sheriff Timothy Lansberry of the Page County Sheriff's Department approached appellant on the street and asked him about taking a truck to the scrap metal yard. Appellant admitted to Lansberry that he had arranged to have the truck towed to the yard. Appellant also told Lansberry that appellant had signed the ticket to have the truck crushed and received the cash in return. During this conversation, appellant stated that he had contacted Mr. Click several times to come and get the truck, but that Mr. Click had refused because his "rollback was down." Appellant was ultimately charged with grand larceny by embezzlement.

Testifying on his own behalf at trial, appellant claimed that his wife was the purchaser of the truck because he did not have a license and was unable to obtain one and that the truck was going to be her vehicle. Appellant testified that he and his wife gave the Clicks $5 or $10 to put the thirty-day tags on the vehicle before leaving the lot. Appellant further testified that he called the Clicks about coming to get the truck because he and his wife were being evicted. Due to a sustained hearsay objection, appellant was prevented from testifying further about the conversation. When asked on direct examination why he did not simply drive the vehicle back to the dealership, appellant testified that the vehicle had broken down and was not operational.

On cross-examination, appellant acknowledged that the truck belonged to the Clicks and that the Clicks still had the title in their name. Appellant also admitted that his wife never had a

job in Massanutten, but that she needed a car to take their child back and forth to the doctor. The Commonwealth also questioned appellant about a conversation he had with his mother over the jail phone in which they discussed the proposed nature of appellant's wife's testimony at trial. The trial court allowed the Commonwealth to play a tape recording of this conversation during its rebuttal case, which it introduced through Deputy Sheriff Lansberry. Lansberry testified that he had personally monitored the conversation. Following the trial court's instructions to the jury and the parties' closing arguments, the jury deliberated and convicted appellant of grand larceny by embezzlement in violation of Code § 18.2-111. The jury recommended sentencing appellant to twenty years' incarceration.

At the beginning of the sentencing hearing, the trial court heard argument on appellant's motion to set aside the verdict. Appellant first suggested that Deputy Sheriff Lansberry's testimony about appellant's phone conversation with his mother violated his constitutional rights because it allowed the jury to infer that appellant was incarcerated prior to trial. Appellant contended that the trial court should have declared a mistrial *sua sponte* under these circumstances despite appellant's failure to request one. Additionally, appellant asserted that the Commonwealth failed to prove that he "received" property from Stanley Auto Max as Code § 18.2-111 requires. Third and finally, appellant argued that the trial court erred in failing to instruct the jury on the definition of possession.

The trial court denied the motion and sentenced appellant to twenty years' incarceration, with sixteen years and ten months suspended. The court also imposed two years' incarceration from a previously suspended sentence. Appellant noted this appeal.

ANALYSIS

A.  Sufficiency of Evidence Supporting Appellant's Conviction

Appellant argues that the evidence was insufficient to support his conviction because the Commonwealth failed to prove that he was "entrusted" with the property of another.  He contends that the evidence demonstrated that Stanley Auto Max entrusted his wife, who was his girlfriend at the time, with the car, not him.  We disagree.

When reviewing a conviction for the sufficiency of the evidence, this Court asks only if "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  Additionally, we "will affirm the judgment unless the judgment is plainly wrong or without evidence to support it."  Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008) (citing Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005)).

Here, a jury convicted appellant of violating Code § 18.2-111, which makes it a crime for an individual to "wrongfully and fraudulently . . . dispose of . . . personal property . . . which shall have been entrusted or delivered to him by another."  The trial court instructed the jury that it could not convict appellant unless it found, *inter alia*, that "the automobile had been *delivered* to the defendant by another."  (Emphasis added).  We must presume that the jury followed the trial court's instructions.  Muhammad v. Commonwealth, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005) (citing Green v. Young, 264 Va. 604, 611, 571 S.E.2d 135, 139 (2002)).  Therefore, we confine our analysis to whether a rational trier of fact could have found that the Commonwealth established beyond a reasonable doubt that the truck was delivered to appellant.

Although the Code contains no statutory definition for the term "delivered," we find that its plain meaning in the context of Code § 18.2-111 flows from the definition of "deliver," meaning "to take and hand over to or leave for another." Merriam-Webster's Collegiate Dictionary 330 (11th ed. 2004).

Considered in the context of this case, we find sufficient evidence in the record to support the conclusion that Stanley Auto Max handed the truck over jointly to appellant and his wife, thereby delivering the truck to appellant for purposes of Code § 18.2-111. Notably, there was credible evidence that the transaction was viewed as a joint "purchase" by appellant and his wife. Mr. Click testified that appellant called him to discuss purchasing a vehicle, chose the truck the day appellant and his wife came to the lot, negotiated the price, and convinced Mr. Click to let them take the truck from the lot. Mrs. Click testified that appellant directed her to use his wife's name on the legal documents. Even appellant confirmed the joint nature of the transaction during his own direct examination. When asked whether his wife purchased a vehicle from the Clicks, appellant responded: "*My wife and I did*, yes." (Emphasis added). He also testified that his wife signed the documents relating to the purchase because it was her vehicle and he was unable to obtain a driver's license. Moreover, when asked whether he gave any money to Mr. Click before leaving with the truck, appellant said, "*we* did give him money for the thirty-day tags." (Emphasis added). When seeking additional payments, Mr. Click spoke with appellant's wife on the phone, and she responded that *they* would come to the dealership to make a payment. Mr. Click also then spoke directly with appellant about payment after following appellant in the truck to his mother's house.

Viewing the evidence in the light most favorable to the Commonwealth, a rational trier of fact could have concluded that Stanley Auto Max delivered the truck jointly to appellant and his wife.

<u>B. Mistrial and Motion to Set Aside the Verdict</u>

Appellant first contends that the trial court erred in failing to declare a mistrial upon its own motion when reference was made to appellant's pretrial incarceration. Specifically, appellant refers to both the testimony of a Commonwealth's witness and a comment by the Commonwealth's attorney regarding appellant's conversation with his mother over a jail telephone. Appellant also argues that the trial court erred in denying his motion to set aside the verdict for the same reason. We find that appellant has waived both arguments.

"It is well-settled that errors assigned because of a prosecutor's alleged improper comments or conduct during argument will not be considered on appeal unless an accused timely moves for a cautionary instruction or for a mistrial." <u>Cheng v. Commonwealth</u>, 240 Va. 26, 38, 393 S.E.2d 599, 605-06 (1990). "A motion for a mistrial is untimely and properly refused when it is made after the jury has retired." <u>Id.</u> at 39, 393 S.E.2d at 606 (citing <u>Price v. Commonwealth</u>, 213 Va. 113, 121, 189 S.E.2d 324, 330 (1972)).

The Supreme Court of Virginia recently discussed the rationale behind the general practice of not considering this type of argument on appeal. In <u>Angel v. Commonwealth</u>, 281 Va. 248, 271-72, 704 S.E.2d 386, 400 (2011), the Supreme Court stated:

> [I]n the absence of a contemporaneous objection and request for a curative instruction or mistrial, the trial court's ability to take effective corrective action is significantly, if not totally, impaired. While we have repeatedly required a contemporaneous objection . . . and request for a curative instruction or mistrial to preserve the issue for appeal, in considering whether the issue was preserved or waived, we have also examined the circumstances of each case to determine the facts surrounding the objection and motions. <u>Burns v. Commonwealth</u>, 261 Va. 307, 341-42, 541 S.E.2d 872, 894-95 (2001); <u>Reid v. Baumgardner</u>, 217 Va. 769, 772-74, 232 S.E.2d 778, 780-81 (1977).

Under the circumstances of each case, a party still preserves a mistrial argument for appeal *so long as the timing of the objection and request for a mistrial do not significantly impair the trial*

*court's ability to take corrective action.*  See id. at 272, 704 S.E.2d at 400.  Although in Angel, appellant's counsel preserved his mistrial argument for appeal because the timing of his second objection and request for a mistral did not significantly impair the trial court's ability to take corrective action, the Supreme Court ultimately concluded that the trial court did not err in denying the appellant's motion for a mistrial.  Id.

Here, appellant does not dispute that he failed to move for a mistrial before the jury retired to deliberate.  He also acknowledges that he did not object to the offending testimony or questioning during the trial at any point, much less before the jury returned a verdict of guilty.  Because appellant failed to raise this issue until his motion to set aside the verdict, the trial court's ability to take corrective action was significantly, if not absolutely, impaired.  Consequently, we find that appellant has waived the portion of this assignment of error that relates to the trial court's failure to declare a mistrial, *sua sponte*.  See id. at 271-72, 704 S.E.2d at 400.

Additionally, appellant contends that the trial court erred in denying his motion to set aside the verdict for similar reasons.  In his motion, appellant referred only to the rebuttal testimony of Deputy Sheriff Lansberry when arguing that the jury heard improper evidence of his prior incarceration.  When denying the motion, the trial court found that no explicit reference was made to appellant's incarceration during the trial.  For the first time on appeal, appellant argues that the Commonwealth's question during appellant's cross-examination about whether he remembered having a conversation with his mother over the "jail phone" was the violation of his constitutional rights.  As we have repeatedly held, we will not consider an argument on appeal that a party failed to present to the trial court.  See Andrews v. Creacey, 56 Va. App. 606, 635, 696 S.E.2d 218, 231 (2010); Rule 5A:18.  Because appellant never presented this specific argument to the trial court, we decline to consider it.

C.  Appellant's Sentencing

In his third assignment of error, appellant argues that the trial court erred in predominately relying on the prior embezzlement conviction when revoking appellant's suspended sentence because there was substantial evidence that appellant had violated other conditions of his probation.  Assuming without deciding that the trial court relied solely on appellant's new conviction in revoking two years of his suspended sentence, once this Court affirms that conviction, the appeal of the revocation becomes moot.  See Patterson v. Commonwealth, 12 Va. App. 1046, 1050, 407 S.E.2d 43, 45 (1991).  Because we affirm appellant's conviction for grand larceny by embezzlement, his argument on this assignment of error is rendered moot.

CONCLUSION

For the foregoing reasons, we affirm the decision below.

Affirmed.