COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Alston and Russell

UNPUBLISHED

IVAN RUCKER

v.      Record No. 0931-17-4

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
APRIL 24, 2018

ALEXANDRIA DEPARTMENT OF COMMUNITY
 AND HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

(Isabel Kaldenbach; Isabel Kaldenbach, PLLC, on brief), for
appellant. Appellant submitting on brief.

(James L. Banks, City Attorney; George McAndrews, Assistant
City Attorney; Christopher T. Mays, Guardian *ad litem* for the
minor child, on brief), for appellee. Appellee and Guardian *ad
litem* submitting on brief.

Ivan Rucker (appellant) argues that the trial court erred in terminating his parental rights

for four reasons: the trial court 1) relied upon a document not available to all parties; 2) applied

the incorrect evidentiary standard; 3) improperly found that the Department of Community and

Human Services (DCHS) provided adequate services; and 4) incorrectly found that DCHS

provided the requisite evidence to support termination. We disagree.

BACKGROUND

Appellant and Jamillia Hansford (Hansford) are the biological parents of a minor child,

E.H. E.H. was born on June 19, 2015. After conducting an investigation, DCHS removed E.H.

from Hansford's care five days later. DCHS filed an emergency removal petition and affidavit

with the Alexandria Juvenile and Domestic Relations District Court (J&DR court). The affidavit

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

documented that Hansford is infected with the human immunodeficiency virus (HIV) and may have transmitted the disease to E.H. Even so, Hansford does not medicate herself or E.H. as directed. It was also alleged that Hansford has substance abuse issues and used marijuana while pregnant. And while residing at Alexandria Community Shelter (ACS), Hansford left E.H. "unattended or with another resident at least four times after being instructed not to do so." Hansford was also recently hospitalized for psychosis. It was also noted that appellant was incarcerated at the time E.H. was removed until October of 2015. The J&DR court entered an order on June 25, 2015, finding that E.H. "would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result."

At the preliminary removal hearing, the J&DR court made the same findings, awarded temporary legal custody to DCHS, provided visitation to Hansford, and entered a preliminary child protective order against Hansford on behalf of E.H. Hansford objected to a finding of abuse or neglect, and an adjudicatory hearing was set for July 31, 2015. At that hearing, the J&DR court found that E.H. was abused or neglected. As a further incident of that hearing, the J&DR court also ordered appellant to submit to a paternity test. Appellant signed the adjudicatory order seen and objected, noting a "lack of evidence of abuse/neglect by [him.]" A dispositional hearing was set for August 31, 2015. DCHS filed its foster care plan with the J&DR court with the goal of return home and outlined services offered and concerns to be remedied by Hansford and appellant before return home was possible.

At the dispositional hearing, the J&DR court transferred custody of E.H. to DCHS and entered a final child protective order. The J&DR court revised the foster care plan to include relative placement as a concurrent goal, ordered Hansford and appellant to "utilize their best efforts" to comply with the plan, and directed DCHS to continue "to utilize reasonable efforts in

making appropriate service referrals." A review hearing was set for December 17, 2015. Appellant signed the order seen and objected to.

On October 13, 2015, the paternity test established that the probability appellant was E.H.'s father was 99.99%. Appellant was released from incarceration on October 15, 2015.

At the foster care review hearing, the J&DR court approved the foster care plan. The permanency planning hearing was set for April 6, 2016. Appellant signed the order noting that he "would like [E.H.] to be returned home sooner or . . . have overnight visits being with [Hansford]."

On March 7, 2016, DCHS filed a petition requesting a permanency planning hearing within six months with the goal of "Return Home/Relative Placement." DCHS filed a second petition on July 1, 2016 with adoption as the revised goal. At the permanency planning hearing on October 31, 2016, the J&DR court terminated appellant's and Hansford's parental rights regarding E.H and approved DCHS's updated foster care plan. Appellant and Hansford appealed to the Circuit Court of the City of Alexandria (trial court). On January 5, 2017, Hansford filed addendums for protected identifying information-confidential pursuant to Code § 20-121.03 regarding her parental capacity assessment. Hansford's counsel signed the addendum on her behalf.

The trial took place on May 2-3, 2017. DCHS attempted to admit the J&DR court's orders terminating Hansford's and appellant's parental rights and approving the foster care plan. Hansford objected, and appellant joined, arguing that this was a *de novo* hearing, and that the trial court was required to make independent findings, and that the evidentiary standard for the termination proceeding was clear and convincing, not preponderance. The trial court sustained the objection and did not admit the orders. DCHS also attempted to admit Hansford's parental capacity assessment, conducted by Dr. Christopher Bishop. Appellant objected, arguing he did

not have access to the assessment. DCHS responded that the J&DR court did not allow appellant access because Hansford asserted her right to privacy but would grant access if he "could show a compelling need for it." Furthermore, DCHS argued that appellant did not suffer prejudice as the assessment pertained to Hansford. In addition, DCHS filed a confidential addendum with the trial court. The trial court stated that appellant would need to establish that he would suffer prejudice if the assessment was admitted. The trial court found that Hansford would have to consent to give appellant access and then accepted DCHS's representation that the assessment minimally referenced appellant. Appellant next argued that he would suffer prejudice because he would not have the opportunity to cross-examine Dr. Bishop and that the trial court would have access to a document he does not. He further argued that a theme of DCHS's case is that appellant "does not understand [Hansford's] mental health issues" and that the assessment contains relevant information. DCHS responded that appellant could have subpoenaed Dr. Bishop. The trial court ruled that it would only consider Hansford's assessment against her and would allow appellant to cross-examine Dr. Bishop if necessary. The assessment was provisionally admitted. Appellant was not authorized to view the document.

DCHS presented its evidence. DCHS established that Hansford and appellant were ordered to comply with DCHS's foster care plan which required them to participate in services and remedy conditions requiring E.H.'s removal. DCHS explained, as stated in the affidavit, that removal was necessary "to ensure [E.H.] receives appropriate care and attention, has stability and [that] all of her needs are met." The conditions requiring E.H.'s removal were: "Hansford's lack of employment, homelessness, questionable mental health and recent psychiatric hospitalizations[,] poor decision making and [E.H.'s] need for daily medication and routine medical care." After E.H.'s paternity was established and upon appellant's release from incarceration, DCHS offered appellant case management services, family engagement services,

referrals, follow-up services, a parental fitness evaluation, the Fathers In Touch program, visitation, and parenting education. Appellant received vocational services and housing assistance through other entities.

Appellant completed the Fathers in Touch program, underwent a mental health evaluation and a parental capacity assessment, and attended visitation. Dr. Mohamed Mansaray conducted appellant's parental capacity assessment. According to Dr. Mansaray, while appellant "has a great desire to be a parent and obviously cares about the wellbeing of [E.H.]," Dr. Mansaray concluded appellant presents a moderate risk of abuse and neglect to E.H. Appellant "holds expectations of [E.H.] that exceed her developmental capabilities" and "downplayed the difficulty that may arise from []Hansford's ongoing struggles with mental illness." Ultimately, his "ability to react appropriately to stressors, emotionally connect, obtain stable employment, establish secure housing, and demonstrate judgment effectively must improve in order for [the] risk to be decreased." Dr. Mansaray suggested that appellant be offered an individual parenting coach, a substance abuse assessment, individual counseling, and marital counseling. Appellant refused to undertake a substance abuse assessment, individual counseling, and marital counseling.

The evidence produced at trial established that even though both appellant and Hansford participated in services, DCHS grew increasingly concerned about appellant's and Hansford's ability to parent E.H. Hansford assaulted appellant in November of 2016. Hansford was required to provide updates on her physical health but failed to do so and remained noncompliant in taking her medication. In supervised visitations, appellant and Hansford were provided two parenting coaches; one focused on improving E.H.'s development and one focused on improving attachment. Initially, appellant and Hansford were engaged. However, it was unclear whether coachings were being applied outside of supervised visitations. Hansford's mental health issues

presented themselves more acutely over time. During visitations, Hansford would become "enraged." This resulted in appellant walking out of visitations. This pattern became more frequent. Later in March of 2016, appellant and Hansford arrived at DCHS for a meeting seemingly under the influence.

In late April of 2016, appellant requested to participate in Hansford's mental health treatment. Hansford refused, "start[ing] a . . . regress[ion in appellant's and Hansford's progress during visitation]." Later that month, one of the parenting coaches provided cues to be implemented with E.H. Appellant encouraged Hansford to apply them. Hansford refused. An argument ensued. Appellant exited the home, leaving E.H. behind with Hansford. Hansford became "verbally threatening." The coach concluded the session. While leaving, the coach "knocked" into E.H. Hansford shouted obscenities at the coach. Visitation was temporarily moved to DCHS. The development-oriented coach stopped providing services during visitation and worked with E.H. at daycare. Even though encouraged to visit E.H. at daycare, only Hansford took advantage of that opportunity on one occasion. In May of 2016, Hansford was hospitalized for mental health reasons under a temporary detention order. There was a concern that Hansford was not taking her psychotropic medication as directed.

DCHS advised appellant and Hansford that it was considering adoption as a goal for E.H. in June of 2016. Subsequent visitations "were very emotionally-laden. . . . [Hansford's] mental health issues began to present more intensely," and appellant began to disengage. He either was not present for the entire visitation, would retreat to the bedroom during visitations, or be on his phone. DCHS employees testified that although appellant did not need to have a working knowledge of Hansford's specific mental condition, it was hoped that he would appropriately tend to E.H. to minimize the impact of Hansford's mental health issues on E.H. Appellant was unable to do so. At one session, appellant was directed to remove E.H. when Hansford was

decompensating. Appellant refused, responding that E.H. would "have to get used to that." In addition, Hansford caused disturbances at DCHS on two occasions during July of 2016.

In August of 2016, DCHS informed appellant and Hansford that termination of parental rights was being considered. The regression in appellant's and Hansford's progress continued. On September 22, 2016, appellant fell asleep during visitation. Hansford became agitated, and a DCHS employee had to seek "additional help to ensure everybody's safety." Hansford confessed to being arrested more than once for hitting appellant. In November of 2016, Hansford assaulted a DCHS employee and attempted to assault another; she was involuntarily taken for a mental health evaluation. At the scene, appellant indicated that Hansford was "bi-polar and not taking her medication." Hansford was then temporarily hospitalized in December of 2016 for psychosis. In January of 2017, Hansford was involuntarily hospitalized after exhibiting manic behavior; she made suicidal statements and "laugh[ed] to herself when nobody else was talking."

The attachment-focused parenting coach testified that while there were positive moments among appellant, Hansford, and E.H., neither parent progressed to a point where they could form a healthy attachment with E.H. Appellant developed negative responses to coaching, and Hansford was unable to put E.H.'s needs above her own. In addition, neither parent was able to grasp that if one parent was unable to meet E.H.'s needs, the other must compensate.

Regarding employment, Hansford was employed from the summer of 2015 until March 2016.

Regarding living arrangements, prior to E.H.'s removal, Hansford lived at ACS. She was then housed at the Carpenter Shelter. Appellant was separately housed there after being released. Hansford was asked to leave in November of 2015 for not complying with shelter rules-there were times when she was unemployed and she interacted with other residents aggressively.

Appellant was asked to leave following a positive drug screen in the early months of 2016. The Transitioning Adults into Living Successfully (TRAILS) program, through New Hope Housing, helped Hansford find an apartment. She was asked to leave due to noise complaints in July of 2016. TRAILS then helped her secure an apartment at Landmark Towers where appellant lived with her. She left that residence in November of 2016. She now resides at ACS. Appellant and Hansford, two weeks prior to trial, appeared together at the Carpenter Shelter inquiring about housing.

Regarding relative placement, DCHS investigated one possibility but found the individual was not a viable option.

It was also noted that E.H. was not developing as she should be.

At the conclusion of DCHS's case, appellant made a motion to strike arguing that DCHS petitioned for termination under Code § 16.1-283(B) and (C) but did not present clear and convincing evidence regarding: abuse and neglect under (B), prior efforts of DCHS to prevent E.H.'s removal under (B), of the conditions under (C), and participation in services provided under (C). Appellant contended he complied with services but DCHS did not provide him those Dr. Mansaray recommended. Appellant also indicated he was unaware of Hansford's mental health issues. Hansford also made a motion to strike, arguing that the J&DR court's finding of abuse and neglect alone did not satisfy the evidentiary burden before the trial court. Hansford also argued that termination was not in the best interests of E.H.

In response, DCHS contended that the evidence provided satisfied the requirements under both subsections. Appellant refused some services offered and disengaged from those he did participate in. Pursuant to subsection (C), appellant and Hansford had more than a year to substantially remedy conditions and did not do so.

The trial court denied both motions to strike.

Appellant testified. The parties stipulated that he was "full-time or close to full-time employed consistently throughout [the course of this case]." Regarding housing, appellant testified that he and Hansford lived together until the day before trial when Hansford became irate and left the apartment. Appellant asserted he wanted to "stay away from [Hansford]" and focus on E.H. Appellant testified he only missed visitations and did not visit E.H. at daycare because he believed both he and Hansford were required to attend together.

At the conclusion of appellant's case, Hansford renewed her motion to strike and appellant joined. The trial court denied the renewed motion to strike.

The trial court terminated appellant's and Hansford's parental rights, found that the requirements of Code § 16.1-283(B)(1), (B)(2), and (C)(2) were met, that the evidence was clear and convincing, and approved DCHS's foster care plan. The trial court indicated E.H. had been in foster care for almost two years, substantial progress had not been made to warrant additional time, and ruling otherwise would not be in the best interests of E.H. In its permanency planning order, the trial court also found that DCHS made reasonable efforts "to reunite the child with []her parents" and noted termination of parental rights was in the best interests of E.H. In its involuntary termination order, the trial court terminated parental rights pursuant to Code § 16.1-283(B)(1), (2) and (C)(2).

Now comes this appeal.

## ANALYSIS

"[I]t would be unfitting to not acknowledge that '[t]he termination of parental rights is a grave, drastic and irreversible action.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 400, 719 S.E.2d 329, 341 (2012) (quoting Helen W. v. Fairfax Cty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991)). "When reviewing a decision to terminate parental rights, we presume the [trial] court 'thoroughly weighed all the evidence, considered the

statutory requirements, and made its determination based on the child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "[Trial] courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interest.'" Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168, 754 S.E.2d 922, 927 (2014). When the determination is based on evidence heard *ore tenus*, the trial court's decision "is entitled to great weight and 'will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 168-69, 754 S.E.2d at 928 (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). Further, the evidence must be considered "in the light most favorable to the party prevailing in the [trial] court." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 303, 746 S.E.2d 509, 513 (2013).

A. THE TRIAL COURT DID NOT COMMIT REVERSIBLE ERROR IN RELYING ON THE ASSESSMENT.

Appellant contends that the trial court erred when it relied on a document not available to all parties. Appellant framed this as an issue of due process in that being denied access to Hansford's parental capacity assessment inhibited appellant in developing his defense.

"[I]n a bench trial, the trial [court] is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." Pierce v. Commonwealth, 50 Va. App. 609, 616, 625 S.E.2d 785, 789 (2007) (quoting Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992) (*en banc*)).

"When a state infringes upon a parent's constitutional right to the companionship of his . . . child in order to protect the child from abuse and neglect, it must satisfy the mandates of procedural due process." Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 829, 433 S.E.2d 500, 505 (1993) (citing Santosky v. Kramer, 455 U.S. 745, 751 (1982)). "Therefore, if

the state seeks to sever the parent-child relationship, the state is required to provide the parent with 'fundamentally fair' procedures in the termination proceeding." Id. "Code § 16.[1]-283 complies with the constitutional mandate of procedural due process." Id. at 830, 433 S.E.2d at 505. "The requirements of the due process clause are satisfied if a party 'has reasonable notice and reasonable opportunity to be heard and to present his claim or defense, due regard being had to the nature of the proceeding and the character of the rights which may be affected by it.'" Eddine v. Eddine, 12 Va. App. 760, 763, 406 S.E.2d 914, 916 (1991) (quoting Dohany v. Rogers, 281 U.S. 362, 369 (1930)). "The 'practicalities and particularities of the case' must be considered in determining whether these requirements are reasonably met." Id. (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

Assuming it was error, it was harmless. "In Virginia, non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Andrews v. Creacey, 56 Va. App. 606, 625, 696 S.E.2d 218, 227 (2010) (quoting Code § 8.01-678). "If, when all is said and done, [it is clear] that the error did not influence the [trial court], or had but slight effect, . . . the judgment should stand." Id. (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 778, 731-32 (2001)). When the objection arose, the trial court requested that the parties argue whether appellant would suffer prejudice. After ruling that appellant would not be granted access to the assessment, the trial court noted it would only consider Hansford's assessment against her and provided appellant the opportunity to cross-examine Dr. Bishop if necessary. Witnesses testified extensively about Hansford's mental health issues in relation to appellant's ability to parent E.H. There is no evidence that the trial court improperly relied on Hansford's assessment.

Turning to appellant's due process rights, as previously stated, the trial court requested argument on possible prejudice. When it ruled on appellant's access to the assessment, it accepted DCHS's representation that Hansford's assessment minimally referred to appellant and indicated appellant would have the opportunity to cross-examine Dr. Bishop if necessary. In consideration of all of these circumstances, the trial court complied with any applicable mandates of due process.

B. THE TRIAL COURT EMPLOYED THE APPROPRIATE STANDARD, AND THE TRIAL COURT PROPERLY FOUND THAT DCHS PRESENTED SUFFICIENT EVIDENCE.

Appellant next contends that the trial court relied on the incorrect evidentiary standard in terminating his parental rights and had insufficient evidence to make that determination.

"We first note that 'absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts.'" City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 561, 580 S.E.2d 463, 465 (2003) (quoting Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977)). There is nothing within the record to support that the trial court applied the incorrect evidentiary standard in this termination proceeding. To the contrary, the trial court clearly recognized the standard it was bound to apply. It ruled DCHS met its burden under Code § 16.1-283(B)(1), (2), and (C) and noted that the evidence was clear and convincing.

> Code § 16.1-283 establishes the procedures and grounds under which a court may order the termination of residual parental rights. The statute provides as follows, in relevant part:
>
> B. The residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment; (ii) an entrustment agreement entered into by the parent or parents; or (iii) other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. . . .

\* \* \* \* \* \* \*

C. The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

\* \* \* \* \* \* \*

2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . .

Winslow, 40 Va. App. at 561-62, 580 S.E.2d at 465-66 (quoting Code § 16.1-283(B)(1), (B)(2), and (C)(2)).

Regarding the best interests of E.H., "[t]his Court has [recognized] that 'there is no simple, mechanical, 'cut and dried' way to apply the best interests of the child standard.'" Eaton v. Washington Cty. Dep't of Soc. Servs., 66 Va. App. 317, 331, 785 S.E.2d 231, 238 (2016) (quoting Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48, 764 S.E.2d 284, 291 (2014)). "The question must be resolved . . . in light of the facts of each case." Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407 (1982)).

In determining what is in the best interests of the child, a [trial] court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age

- 13 -

and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Id. (quoting Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 161, 590 S.E.2d 575, 581-82 (2004)).

Appellant was not involved in E.H.'s life until October of 2015 when E.H. was already approximately four months old. While it was clear that appellant expressed interest in parenting E.H., he was unable to appropriately respond to E.H. when Hansford's mental health issues manifested. Appellant would abandon E.H. and exit the home. This resulted in E.H. being left with Hansford as she continued to unravel. DCHS employees noted that appellant had not learned to minimize the impact of Hansford's mental health issues on E.H. A DCHS employee also testified that appellant did not progress to a point where he formed a healthy attachment with E.H. And according to his parental capacity report, Dr. Mansaray noted appellant presented a moderate risk of abuse and neglect to E.H. In addition, appellant's housing situation was in flux despite his stable financial state. Although appellant testified that he now desires to focus on E.H., he and Hansford were living together and intended to raise E.H. together until the day before trial. After being informed that DCHS was considering adoption, appellant developed negative responses to coaching and ultimately disengaged. He did not visit E.H. in daycare. Further, E.H. is developmentally delayed. The trial court had credible evidence and was not plainly wrong when it ruled that termination was in E.H.'s best interests.

We need not reach appellant's contention that the trial court had insufficient evidence to make the abuse and neglect finding to terminate pursuant to Code § 16.1-283(B). Appellate courts "decid[e] cases 'on the best and narrowest ground available.'" McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010). "We have previously

upheld terminations under both . . . as well as under one or either of the individual subsections." Winslow, 40 Va. App. at 563, 580 S.E.2d at 466. Unlike subsection (B), a finding of abuse and neglect is not a requirement under (C)(2). Accordingly, Code § 16.1-283(C)(2) speaks "retrospectively"-the focus of the inquiry is whether "the parent . . . 'ha[s] been []willing or []able within a reasonable period of time . . .' to 'remedy substantially' the conditions which led to the foster care placement." Id. at 562-63, 580 S.E.2d at 466. Witness testimony demonstrated that appellant could not provide E.H. with "appropriate care and attention," "stability," and could not meet all of her needs. Appellant could not parent E.H. appropriately when Hansford's mental health issues manifested. Although he could financially provide for E.H., appellant did not create a stable environment for E.H. because he remained in a relationship with Hansford and his housing situation was constantly in flux. In addition, appellant participated in some services, refused to participate in others, and then disengaged from services he did participate in.

The trial court had credible evidence and was not plainly wrong when it relied on these circumstances to justify its findings. Because the evidence was sufficient to uphold termination under (C)(2), we need not address whether subsection (B) was satisfied.

### C. THE TRIAL COURT DID NOT ERR IN FINDING THAT DCHS PROVIDED REASONABLE AND APPROPRIATE SERVICES TO APPELLANT.

Appellant next argues that he was not provided adequate services pursuant to Code § 16.1-283(B) and (C). Both Code § 16.1-283(B) and (C) state that the "[trial] court *shall take into consideration* the efforts made to rehabilitate the parent or parents by any . . . agencies prior to the child's initial placement in foster care." (Emphasis added). Subsection (B) "does not require that [DCHS] offer any services to a parent before requesting termination of the parent's rights." Farrell, 59 Va. App. at 408-09, 719 S.E.2d at 345. "Subsection (C) . . . require[s] provision of [reasonable and appropriate] rehabilitative services before termination because they do not begin with a prior finding of abuse or neglect." Eaton, 66 Va. App. at 329, 785 S.E.2d at

237-38 (quoting Farrell, 59 Va. App. at 409, 719 S.E.2d at 346). It is important to note that the trial court must make these determinations based upon clear and convincing evidence. Toms, 46 Va. App. at 275, 616 S.E.2d at 774.

Appellant cites Thach v. Arlington Cty., 63 Va. App. 157, 754 S.E.2d 922, in asserting that DCHS did not provide adequate services. In Thach, allegations of abuse and conditions involved Thach (the child's biological mother). The issue was whether Mendoza (the child's biological father) was required to remedy those conditions "if he was not the cause of those conditions or living in the home when the conditions occurred." Id. at 163, 754 S.E.2d at 925. The Department of Human Services' (DHS)

> primary focus was on providing Thach with services . . . [, and] DHS's only recommendations for Mendoza were to complete parenting classes and participate in home-based services. DHS was also concerned that Mendoza, because of his lack of awareness with respect to Thach's limitations, was unable to protect [the child] from neglect.

Id. at 171-72, 754 S.E.2d at 929.

This Court noted that although Mendoza did not make "substantial progress" within the twelve-month window, "significant progress" was made. Id. at 172, 754 S.E.2d at 929. In addition, in Thach, this Court noted that services were not offered to Mendoza until the child was in foster care for eleven months. This Court emphasized that services were offered "one month shy of the expiration of the statutory period," which this Court believed was an underlying factor for the trial court's decision to delay the termination hearing. This Court found that Mendoza completed parenting classes, the evaluation, and began home-based services and that DHS expressed "no concerns about Mendoza's ability to care for [the child] on his own." Id. This Court then reversed the trial court's termination of Mendoza's parental rights, finding the trial court did not have clear and convincing evidence to support its determination. Id. at 173, 754 S.E.2d at 930. The trial court further found that Mendoza provided a "satisfactory home for [the

child's] younger brother, and the neglectful parent had been removed from the equation." Id. It necessarily follows that Thach is distinguishable. Here, the trial court denied appellant additional time to correct his shortcomings and recognized that services were provided much earlier than those provided to Mendoza. Finally, the trial court further found that appellant did not demonstrate the relative progress accomplished by Mendoza in the Thach case. Even more significant, DCHS remained concerned about appellant's ability to parent.

Pre-removal efforts consisted of DCHS receiving reports regarding Hansford. DCHS undertook an investigation. In light of the reports, its investigation, and the age of E.H., DCHS removed E.H. from Hansford's care.

Post-removal efforts, pursuant to Code § 16.1-283(C), included providing appellant with case management services, family engagement services, referrals, follow-up services, a parental fitness evaluation, the Fathers In Touch program, visitation, and parenting education. He received vocational services and housing assistance through other entities. Dr. Mansaray recommended: an individual parenting coach, substance abuse treatment, and individual counseling. Appellant refused to undergo individual counseling, marital counseling, and substance abuse-related services. Appellant took issue with not being offered services recommended by Dr. Mansaray in addition to vocational and housing services. While DCHS provided him and Hansford shared parenting coaches, it did not offer those other services because appellant indicated he did not need them, he did not want them, or that he was receiving them from other agencies. Appellant disengaged during visitations which is where the parenting coaching occurred. DCHS "is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)). The trial court generally

- 17 -

noted that DCHS met the requirements of the statutes. Thus, the trial court implicitly found that DCHS provided "reasonable and adequate" services.

The trial court had credible evidence and was not plainly wrong in its determination.

CONCLUSION

The trial court did not abuse its discretion when it admitted Hansford's assessment. If it did, the error was harmless. Further, appellant's due process rights were not violated because the trial court ruled consistent with any applicable due process requirements. The trial court applied the correct evidentiary standards when terminating appellant's parental rights, and its conclusions were supported by credible evidence and were not plainly wrong. Furthermore, DCHS was not required to provide appellant services prior to E.H.'s placement in foster care. Finally, regarding the services that were provided to appellant while E.H. was in foster care, the trial court had credible evidence to support its finding and was not plainly wrong in its determination. Thus, we affirm the trial court.

<u>Affirmed.</u>