UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Alston, Chafin and Senior Judge Haley


JACOB BRANCH

v.     Record No. 0211-18-2

RICHMOND CITY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JULY 24, 2018


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

(Richard H. Lippson, on brief), for appellant.

(Matthew R. Morris, Assistant City Attorney; Donald Richardson,
Guardian *ad litem* for the minor child, on brief), for appellee.


Jacob Branch (father) appeals an order terminating his parental rights to his child.  Father

argues that (1) the circuit court's decision was "clearly erroneous" because "it did not receive

sufficient evidence of [the Richmond City Department of Social Services' (the Department)]

compliance with its affirmative duty to investigate . . . [father's] relatives" and find that the

Department "had met its affirmative statutory obligation to investigate [father's] potential relative

placements prior to recommending adoption and termination of the residual parental rights of

[father];" and (2) the circuit court erred by finding that there was clear and convincing evidence to

terminate his parental rights pursuant to Code § 16.1-283(C)(2).  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the circuit court.  See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

Father and Toesheba Barksdale (mother) are the biological parents of the child who is the subject of this appeal. Father was forty-six years old, and mother was sixteen years old when she became pregnant with the child.

In September 2014, the child, who was six years old at the time, lived with mother. The Department received a child protective services complaint alleging domestic violence in the home and substance abuse by mother. The Department interviewed the child, who confirmed that mother and her boyfriend, Andre Madison, had been fighting on September 4, 2014, and did not stop until the child stepped in between them. The Department also asked the child about her father, but the child referred to Madison as her father. When asked if the child "had any other dads," the child responded no. The Department spoke with mother about father, and mother reported that father only saw the child twice per year. Subsequently, the Department spoke with father, who indicated that he had been involved in the child's life but had not spoken with mother in more than a year. He reported that he did not see the child regularly because he could not communicate with mother; instead, he would ask the maternal grandmother about the child. He never filed a petition seeking visitation with the child.

In November 2014, mother gave birth to a baby, who tested positive for heroin, cocaine, and methadone.[1] Although she initially denied using drugs, mother later admitted that she used

---

[1] Madison is the biological father to the baby. Since father is not the biological parent to the baby and the baby is not the subject of this appeal, we will not discuss the baby herein.

cocaine and heroin within seven days of the baby's birth. The Department also learned that the child had not been seen by a doctor for a well check-up in two years and had missed two medical appointments in 2014. Because of the recent domestic violence incident, mother's "lack of attention to [the child's] healthcare and needs," and the baby's positive tests for cocaine, heroin, and methadone, the Department removed the child from mother's care on November 14, 2014.

The Department investigated several relatives, including the maternal grandmother and a maternal great aunt, as possible placement options for the child. The Department investigated the maternal grandmother as a possible relative placement, but she was an ineligible placement because of a prior barrier crime. The Department could not locate the maternal great aunt.

When the Department asked father if he was willing to take the child in order to avoid foster care, father reported that "he was unable to take [the child] because of his living situation." Father lived with another person, and father was not on the lease for that apartment. The guardian *ad litem* discussed with father the appropriateness of his housing, but father continued to live there "for a while." Father reported that he did not want to "get a larger place" unless he knew that the Department was going to place the child with him. The Department explained that "that's not how things work. If he wanted custody of his daughter, he would have needed to put forth that effort to get a larger place that could accommodate her so that that home could be evaluated . . . ."

While the child was in foster care, the Department offered visitation to father, and he regularly participated in visits with the child. The social worker testified that "the visits went well."

The City of Richmond Juvenile and Domestic Relations District Court (the JDR court) ordered father to participate in parenting classes at Stop Child Abuse Now (SCAN). Initially, he was compliant. However, on August 5, 2015, the County of Henrico Circuit Court found father

guilty of assault and battery of a family or household member for an incident that occurred on November 20, 2014, and sentenced him to twelve months in jail.[2] Then, on September 17, 2015, the County of Chesterfield Circuit Court found father guilty of creating an unlawful image and disseminating a photograph to harass, with an offense date of February 4, 2015, and sentenced him to a total of twenty-four months in jail, with eighteen months suspended.[3] As a result of his incarceration, father did not finish his parenting classes, and even after he was released from jail, he did not complete the parenting classes.

On September 29, 2015, the Department filed a petition to terminate father's parental rights. On November 24, 2015, the JDR court terminated father's parental rights.[4] Father appealed to the circuit court.

For the first time, on the same day as the termination hearing in the JDR court, father provided the Department with the names of his mother and his cousin as possible relative placements. The Department spoke with father's cousin, who lived in Connecticut. Father's cousin had never met or had any contact with the child. His cousin did not become involved in the matter.

In March 2016, several weeks after he was released from jail, father contacted the Department about visiting the child. When asked why he had not contacted them sooner, he explained that he was trying to obtain employment and housing. He visited with the child on March 8, 2016, which was his first visit since July 2015.

---

[2] The County of Henrico Circuit Court found father not guilty of a charge of strangulation.

[3] The sentences ran concurrently.

[4] The JDR court also terminated mother's parental rights, and she appealed to the circuit court.

On March 21, 2016 and November 21, 2017, the parties appeared before the circuit court.[5] The Department presented evidence that the child was doing well in foster care and excelling in school. When the child entered foster care, she was behind in school, but she received tutoring and was on grade level at the time of the circuit court hearing. The child is in a possible adoptive placement.

At the conclusion of the Department's evidence, mother made a motion to strike and argued that the Department did not investigate all possible relatives. The circuit court denied mother's motion. Father joined in mother's motion to strike and also argued that the Department did not "provide[] a sufficient basis for terminating his parental rights." The circuit court denied father's motion.

Father testified that he always had wanted custody of the child, but he admitted that he never filed for custody of the child. He denied telling the Department that he was unwilling to have the child live with him at the time of the removal. In March 2016, he moved in with his adult daughter for approximately seven or eight months. Then, for the two to three months prior to the circuit court hearing, father had lived in a private house, with a tenant living below him. Father explained that he received disability, which paid the rent, and he did freelance photography work.

When asked why he did not disclose any relatives as possible placements until the termination hearing in the JDR court, father testified, "I just came in here to do the right thing and try to take control of my child, and I didn't really want to put nobody else into my family life or social life or however you want to put it." His cousin visited him while he was incarcerated

---

[5] Only the Department presented its case on March 21, 2016, and the case was continued to another date to allow the parents to present their cases. The delay in the hearings occurred because of issues regarding mother's counsel. The parents presented their cases on November 21, 2017.

and told father that he would be willing to care for the child. Father told his cousin that he had "been trying to do this all by [himself]." Father testified that he was separated from his wife, and although she offered to come to the hearing with him, he refused and explained, "The same thing I have been saying earlier, I don't really want nobody else involved in this. . . . I don't want to go no further than this. I just want to keep it with me."

Father indicated that he visited with the child as often as he was allowed, and after the termination hearing in the JDR court, he was allowed to visit once per month. However, he recently missed two of the monthly visitations because he was caring for his mother, who had Stage 3 cancer.[6]

At the conclusion of all of the evidence, mother renewed her motion to strike and argued that the Department had not investigated all of the possible relative placements. Father joined in with mother's arguments regarding relative placements and also argued that the Department had not presented clear and convincing evidence to terminate his parental rights. After hearing all of the arguments, the circuit court took the matter under advisement, and on January 10, 2018, issued a memorandum opinion and order. The circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(2).[7] This appeal followed.

ANALYSIS

*Relative placement*

Father argues that the circuit court's decision was "clearly erroneous" because the Department did not comply with its duty to investigate father's relatives as potential relative placements. Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). "This

---

[6] In his opening brief, father reported that his mother has since passed away.

[7] The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(B).

- 6 -

Court has held that this provision obligates [the Department] 'to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 567, 811 S.E.2d 835, 845 (2018) (quoting Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 217, 597 S.E.2d 214, 220 (2004)).

In its memorandum opinion and order, the circuit court reviewed the Department's investigation of the child's maternal grandmother and maternal great aunt, as well as the baby's paternal grandmother. The circuit court concluded that the Department "met its burden to investigate reasonable alternatives to termination as mandated by Va. Code § 16.1-283(A)." The circuit court further found that "[a]fter due consideration of these alternative placements, . . . none of the alternative placements presented provide a home for [the child] conducive to effective childrearing."

Although mother addressed father's relatives in her motion to strike and renewed motion to strike, and father incorporated mother's arguments into his own, the circuit court never addressed the Department's investigation of father's relatives. "Because the record does not show that the trial court ruled on appellant's argument, there is no ruling of the trial court for this Court to review on appeal." Duva v. Duva, 55 Va. App. 286, 299, 685 S.E.2d 842, 849 (2009); see also Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993). Accordingly, this Court will not address father's first assignment of error.

*Termination of parental rights*

Father argues that the circuit court erred by terminating his parental rights pursuant to Code § 16.1-283(C)(2), which states that a circuit court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed 12 months

- 7 -

from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Father asserts that he was compliant with the Department's requirements. He contends that he maintained contact with the Department and attended meetings and hearings. He enrolled in parenting classes, but admitted that he did not complete them because he was incarcerated. He argues that his incarceration was relatively short, from August 2015 until February 2016, and should not affect the fact that he wanted custody of the child. He further asserts that he regularly visited with the child.[8] He also contends that he had suitable housing and sufficient financial means to meet the child's needs.

---

[8] The circuit court erroneously stated in its memorandum opinion and order that father visited the child only once after he was released from incarceration. We find that this is harmless error, especially considering all of the other evidence supporting the circuit court's ruling. An appellate court "will not reverse a trial court for evidentiary errors that were harmless to the ultimate result." Carter v. Commonwealth, 293 Va. 537, 544, 800 S.E.2d 498, 502 (2017) (quoting Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015)). "In Virginia, non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Andrews v. Creacey, 56 Va. App. 606, 625, 696 S.E.2d 218, 227 (2010) (quoting Code § 8.01-678). An error may be found harmless when "overwhelming expert and other evidence support[s] the court's ultimate holding." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185-86, 409 S.E.2d 16, 21 (1991).

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005). "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services." Id. (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The circuit court held that termination of father's parental rights was in the best interests of the child and that father "failed to remedy substantially the conditions leading to, or requiring the continuation of, foster care." The circuit court expressed concern about father's history with mother and "the various allegations arising out of their relationship." The circuit court noted that father was forty-six years old and that mother was sixteen years old when she became pregnant with the child.

The circuit court further held that at the time of the removal, father reported that he could not take custody of the child due to choices he had made about his living situation. The circuit court acknowledged that father "recently improved his living situation," but was concerned about "the stability of this situation." At the time of the circuit court hearing, father had lived in his current apartment for only two or three months. The circuit court also was concerned about father's "varied monthly income."

In addition, the circuit court considered father's recent incarceration and his suspended sentences. Father was convicted of assault and battery of a family or household member, who was identified as his estranged wife. He also was convicted of creating an unlawful image and disseminating a photo to harass. Despite the fact that the parties "offered little factual

background" regarding the charges, the circuit court recognized that father was incarcerated for months while the child was in foster care and when the Department filed its petition to terminate his parental rights. Once he was released from jail, father failed to complete the Department's requirements, including the parenting classes. The circuit court held that from the time of the termination hearing in the JDR court to the time of final hearing in the circuit court, father "was allowed almost two years to correct the conditions leading to [the child's] removal," but he failed to do so.

Meanwhile, the child was doing very well in foster care and was in an adoptive placement. At the time of the circuit court hearing, the child had been in foster care for almost three years. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Based on the totality of the circumstances, the circuit court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.