COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Frank

ROBERT ALLEN WHITMER

v.      Record No. 0083-19-2

SPOTSYLVANIA COUNTY DEPARTMENT OF
  SOCIAL SERVICES

ROBERT ALLEN WHITMER

v.      Record No. 0084-19-2

SPOTSYLVANIA COUNTY DEPARTMENT OF          MEMORANDUM OPINION[*]
  SOCIAL SERVICES                                PER CURIAM
                                                 JULY 23, 2019
ROBERT ALLEN WHITMER

v.      Record No. 0085-19-2

SPOTSYLVANIA COUNTY DEPARTMENT OF
  SOCIAL SERVICES

ROBERT ALLEN WHITMER

v.      Record No. 0086-19-2

SPOTSYLVANIA COUNTY DEPARTMENT OF
  SOCIAL SERVICES

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge

(Brian A. Choisser; Getty & Associates, P.C., on brief), for
appellant.

(Robert F. Beard; Carolyn Seklii, Guardian *ad litem* for the minor
children; Vanderpool, Frostick & Nishanian, P.C.; Sullivan & Seklii,
PLC, on brief), for appellee.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Robert Allen Whitmer (father) appeals the permanency planning orders for his four youngest children. Father argues that the circuit court erred by (1) approving the foster care goal of adoption because the Spotsylvania County Department of Social Services (the Department) "did not make reasonable efforts and offer reasonable services to achieve the previously identified goals of relative placement;" and (2) admitting the testimony about the efforts of Wanda Morris, the maternal grandmother, "to have the Board of Supervisors review this case." Upon reviewing the record and briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180 (1991)).

Father and Lisa Whitmer (mother) are the biological parents of five children, born in 1998, 2007, 2010, 2012, and 2013 respectively.[2] The Department first became involved with the family in December 2008 after there was a founded disposition against father for physical neglect. In December 2011, the Department opened a foster care prevention case due to father's

---

[1] The record in these cases was sealed. Nevertheless, these appeals necessitate unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The eldest child, who lives with Morris, was twenty years old at the time of the circuit court hearing, and thus, was not a subject of the proceedings below. Accordingly, all further references herein to the parents' children shall be to the parents' four youngest children who are the subjects of these appeals.

and mother's substance and alcohol abuse. The Department referred the parents to substance abuse treatment. In August 2013, the Department again became involved with the family after one of the children tested positive for opiates at birth.

In February 2015, father attempted to commit suicide by driving his vehicle into a tree. At the time, both he and mother were under the influence of alcohol, and father reported taking prescription pills. The Spotsylvania County Juvenile and Domestic Relations District Court (the JDR court) awarded custody of the children, who ranged in age from one to eight years old, to Morris. In July 2015, the JDR court entered a child protective order, which prohibited the parents from residing in the children's home and having any unsupervised contact with the children. The JDR court ordered foster care preventive services for the family.

From July 2015 through March 2017, the Department provided numerous services to the children, parents, and Morris. The Department referred both father and mother for substance abuse treatment, but neither completed the screening. The Department also provided Morris with services, including financial assistance, daycare for the two youngest children, and a parent educator. The children were referred for counseling and therapeutic day treatment at school.

The 2015 child protective order remained in place until March 2017, when the JDR court entered a new child protective order. The JDR court continued the prohibition of the parents living in the children's home and having any unsupervised contact with the children.

In June 2017, the Department became involved again after the police responded to a domestic matter at Morris's house. Mother was intoxicated and had threatened to burn down the house. The children reported that they were afraid of mother. Morris was not home at the time, but mother, father, and the children were present and had been living together for more than a

week, despite the terms of the 2017 child protective order.[3] As a result of the incident, the Department placed the children in foster care and prepared a foster care plan with concurrent goals of relative placement and adoption.

On July 21, 2017, the JDR court adjudicated that the children were at risk of abuse or neglect, and on August 4, 2017, the JDR court entered a dispositional order. The JDR court ordered the Department to consider Morris as a relative placement.

The Department offered weekly visitation and therapeutic visitation to Morris. The visitation supervisors observed Morris frequently on her phone during the visits and interacting more with one child than with the other children. Despite receiving written information and seeing the supervisors model appropriate behavior, Morris had difficulty redirecting the children and applying appropriate consequences. The supervisors did not see any improvement in Morris's parenting skills between January and April 2018.

The Department also referred Morris to a parenting class and required her to participate in a psychological and parenting capacity evaluation. Morris complied with the Department's requests. In February 2018, the Department received the psychological evaluation, which indicated that Morris had a history of depression and anxiety. The evaluator opined that it was "questionable whether Ms. Morris has the emotional resources, the clarity of judgment, and the stamina to follow through on her good intentions for her grandchildren." The evaluator explained, "Because Ms. Morris has difficulty standing up for and protecting herself, she may have difficulty setting limits and enforcing boundaries with others including other adults and any children in her care." The evaluator concluded that "Ms. Morris' lack of assertiveness and her aversion to confrontation likely will make it difficult for her to provide needed structure for

---

[3] Morris testified that her son, his girlfriend, the parties' adult child, and another individual were also at the house.

- 4 -

children in her care." After receiving the report, the Department did not offer any additional services to Morris, considering it had already provided her with "extensive services . . . since 2015, and at that point, there were no further services that could be offered to remedy the situation."

In April 2018, the Department petitioned to change the foster care goal to adoption because of a lack of progress. On May 4, 2018, the JDR court entered permanency planning orders approving the goal of adoption. Father, mother, and Morris appealed the JDR court's permanency planning orders to the circuit court.

On November 19, 2018, the parties appeared before the circuit court. Father and mother requested a goal of relative placement and that the children be returned to Morris's care. The Department presented evidence that Morris had not made any progress and that the Department remained concerned about her ability to protect the children and provide a "safe and stable home."

Morris testified that she had complied with all of the Department's requests and wanted the children to be returned to her care. She admitted that just before the Department removed the children in June 2017, she, the children, and the parents went on a camping trip together, and the parents had been staying in their home for a few days. Morris believed that they were not violating the protective order because the parents were just staying with them, and not "living" with them. Morris testified, however, that she would not allow the parents to come to her house if she had custody of the children.

At the time of the circuit court hearing, the children were eleven, eight, six, and five years old. The Department presented evidence that the children have special needs. The two oldest children were placed together in one foster home, and the two youngest children were together in a separate foster home. The three oldest children participate in counseling. The children have

anger issues, and the oldest child had had suicidal ideations. Three of the children are in, or have been referred for, therapeutic day treatment at school.

After hearing the parties' evidence and arguments, the circuit court found that Morris was not an appropriate relative placement and approved the foster care goal of adoption. These appeals followed.

ANALYSIS

*Foster care goal*

Father argues that the circuit court erred by approving the foster care goal of adoption because the Department did not offer reasonable services to Morris. Father emphasizes that Morris participated in all of the services offered by the Department; however, the Department still expressed concern about Morris's ability to protect the children and create boundaries with father and mother. Father contends that the Department did not offer sufficient services to address its concerns.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cty. Dep't of Soc.

Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). Contrary to father's arguments, the Department had provided numerous services to this family, including Morris, since 2015. The Department offered Morris parenting classes and therapeutic visitation. The visitation supervisors testified that they did not see any progress being made while they monitored Morris's visitation with the children over a period of several months and despite the parenting classes.

At the time of the circuit court hearing, the Department had been involved with the family for approximately ten years. Morris had had custody of the children from 2015 through 2017. Child protective orders were in place, and the Department repeatedly reminded Morris of the importance of complying with the court's orders and not allowing the parents to visit with the children in an unsupervised setting. The circuit court was concerned that Morris still did not recognize the problems when she allowed mother and father to vacation with her and the children and stay at their house, despite the terms and conditions of the 2017 child protective order.

Mother and father asked the circuit court to give Morris "more services to get her where she needs to be." The circuit court asked "how long and how much," to which the parents had no answer. The circuit court found that "based upon the services offered so far," it did not appear that Morris would change. "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Farrell, 59 Va. App. at 425 (quoting Winfield v. Urquhart, 25 Va. App. 688, 695-96 (1997)); see also Geouge v. Traylor, 68 Va. App. 343, 375 (2017).

The circuit court also reviewed Morris's psychological evaluation and the evaluator's conclusion that Morris "may be overestimating [her] ability to meet the demands growing children can make on a caretaker's time, energy, and patience over the long run." The circuit

court found that although Morris clearly loved the children and could "talk-the-talk," she could not "walk-the-walk."

Based on the circumstances of this case, the circuit court did not err in approving the foster care goal of adoption. The Department had offered services to Morris for years, but she had not demonstrated an ability to protect the children. "Because this Court defers to a lower court's judgment based on evidence heard *ore tenus* unless plainly wrong or without support, Logan, 13 Va. App. at 128, it does not disturb the circuit court's ruling that no relatives were suitable placements." Castillo, 68 Va. App. at 568.

*Admission of evidence*

Father argues that the circuit court erred in allowing Morris to testify about her contact with the Board of Supervisors. On cross-examination, the Department asked Morris whether she notified the Board of Supervisors about the case. Mother's counsel objected based on relevance, and the trial court explained that it did not know what the relevance would be either, but allowed her to answer the question.[4] Morris testified that she reported to the Board of Supervisors that she thought she was being treated unfairly. The circuit court explained that the Board of Supervisors had no control over the courts, and it was the judge's job "to decide whether or not [she had] been treated unfairly." The circuit court instructed counsel to "move on," because although Morris had "a right to complain to the Board of Supervisors about anything she wants to, . . . they don't have jurisdiction to do anything about it." Father argues that this line of questioning was irrelevant and more prejudicial than probative.

"Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of

---

[4] Father's objection to the line of questioning was noted in his objections attached to the final order.

discretion.'" Surles v. Mayer, 48 Va. App. 146, 177 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16 (1988)) (brackets in original); see also Castillo, 68 Va. App. at 558.

Assuming without deciding that the circuit court abused its discretion in allowing the testimony, any error was harmless. "In Virginia, non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Andrews v. Creacey, 56 Va. App. 606, 625 (2010) (quoting Code § 8.01-678). "If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . ." Id. (quoting Clay v. Commonwealth, 262 Va. 253, 260 (2001)) (alterations in original).

The record does not reflect that the circuit court attached any weight to Morris's testimony about the Board of Supervisors. In fact, the circuit court seemed to dismiss the testimony, when it told the Department to "move on" with its questions and noted that Morris had a right to raise issues with the Board of Supervisors. Accordingly, any potential error was harmless.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.