COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judges AtLee and Friedman
Argued by videoconference


JAMES ALBERT AURILIO
                                            MEMORANDUM OPINION[*] BY
v.       Record No. 0642-22-4              JUDGE FRANK K. FRIEDMAN
                                                 MAY 2, 2023
ANTONIA CONCEPCION AURILIO


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

Thomas Woehrle (Woehrle Dahlberg Yao, PLLC, on briefs), for
appellant.

Beth A. Bittel (Bittel & Anthony, P.C., on brief), for appellee.


James Albert Aurilio (husband) appeals the circuit court's final decree of divorce. Husband

argues that the circuit court erred by awarding Antonia Concepcion Aurilio (wife) $3,500 per month

in "indefinite" spousal support because it failed to consider wife's "actual gross earnings" from her

home-based businesses and her minimal efforts to pursue "regular full-time employment." Husband

further asserts that the circuit court erred when it "coerced" him to pay the loan on wife's car,

despite the parties' agreement that wife would be responsible for the loan payments. In addition,

husband contends that the circuit court considered "excessive" housing expenses for wife when it

determined spousal support notwithstanding evidence from husband's expert about the real estate

market. Husband also argues that the circuit court adopted an incorrect date of separation for the

parties. Finally, husband challenges the circuit court's ruling requiring him to maintain wife as the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

beneficiary of his two life insurance policies. We find no error and affirm the circuit court's judgment.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

Husband and wife married on December 31, 1998, and two children were born of the marriage.[1] During the marriage, husband was in the Marine Corps and deployed on three combat missions. In September 2012, husband retired from the Marine Corps, and in late 2012 or early 2013, obtained a civilian position with the Department of Defense. Wife was the primary caretaker of their children. She had a high school diploma and had taken a few college courses. During the marriage, wife worked periodically, but her last full-time job was in 2001.

In August or September 2019, husband admitted to wife that he had reconnected on social media with an ex-girlfriend. Husband subsequently moved out of the marital bedroom and into the basement, so that he would have "time to think." On September 22, 2019, husband moved out of the marital residence and moved into a townhome. Although husband opened a separate bank account on October 1, 2019, the parties maintained their joint bank accounts, and husband continued to pay the household expenses.

After husband left the marital residence, wife changed the locks and garage code, installed cameras on the house, and boarded up a dog door. In November 2019, wife asked husband if they could work on their marriage and told him that she would "do anything" to save

---

[1] Both children were emancipated adults when the circuit court entered the final decree of divorce.

their marriage.  For the next several months, husband and wife exchanged text messages, went on dates, and engaged in sexual relations.  Wife purchased husband's groceries, cooked his meals, and picked up his prescriptions.  They celebrated Thanksgiving, Christmas, and their anniversary together.  They planned trips together and held themselves out to the public as a married couple.  Although husband never returned to the marital residence to sleep overnight, wife occasionally slept overnight at husband's townhome; she did not leave any of her clothing or toiletries at his house.

On July 27, 2020, husband emailed wife with a proposal for separating their finances and told her that "the marriage [was] no longer in his best interest."  They then separated their financial accounts, and wife stopped grocery shopping and cooking for husband.  He continued to pay the mortgage, homeowner's association dues, utilities, and wife's car payment.

In September 2020, wife filed a complaint for divorce of fault grounds of desertion and adultery.  Wife alleged that the parties had separated as of July 27, 2020, the date of husband's email.  She requested an award of spousal support, equitable distribution, and attorney fees and costs.  Husband filed a demurrer, answer to wife's complaint, and counterclaim.[2]  Husband asserted that the parties had separated on or about September 22, 2019, when he moved out of the marital residence.  He requested a divorce based on the parties living separate and apart for more than one year, as well as an award of equitable distribution and attorney fees and costs.

On September 23, 2021, the circuit court entered an "Agreed Order *Pendente Lite*."  The parties agreed to list the former marital residence for sale, and husband would continue to pay the mortgage and homeowner's association fees until the house sold.  Husband further agreed to pay the loan payment on wife's car, name her as the sole beneficiary of a life insurance policy he

---

[2] The circuit court subsequently entered an agreed order sustaining the demurrer to wife's allegation of adultery.  Wife filed an amended complaint for divorce.  Husband filed an answer to the amended complaint and counterclaim.

had through his employment, and list her as a fifty percent beneficiary, with the children as the other fifty percent beneficiary, of the Prudential life insurance policy.[3]  In addition, the parties agreed that husband would pay wife $1,700 per month as spousal support, and wife would "actively seek out employment."

On January 12, 2022, the parties appeared before the circuit court for a hearing on the grounds for divorce, equitable distribution, spousal support, and attorney fees.  At the beginning of the hearing, the parties informed the circuit court that they had resolved some of the issues and presented the court with their written stipulations.  The parties had agreed that wife would retain her vehicle and be responsible for the loan payment, insurance, and "all costs of ownership" for her car.  The parties also had agreed to the division of the proceeds from the sale of the former marital residence.

The circuit court heard evidence that the parties had been married for twenty-three years and had enjoyed an "upper middle class" standard of living.  Both parties testified about their separation.  Husband argued that the date of separation was September 22, 2019, and wife asserted that they separated on July 27, 2020.  Wife testified that the "only thing different" with their marital relationship between November 2019 and July 2020 was that they were living in separate houses.  Wife, however, believed that they were "still in a marital relationship" until July 27, 2020, when husband sent her the email stating that the marriage was no longer in his best interest.  According to wife, after that email, the parties "stopped being a married couple." It was clear to wife that husband intended to end their marriage.  On the other hand, husband testified that he had intended for the parties to live separate and apart permanently when he

---

[3] Husband had an approximately $100,000 life insurance policy through his employment and a $750,000 life insurance policy through Prudential.  During the marriage, husband had named wife as the sole beneficiary of both life insurance policies.  After they separated, he "removed" her as the beneficiary of the Prudential life insurance policy and named their children as the beneficiaries.

moved out of the marital residence on September 22, 2019. His "intent to be separate" never changed because their attempt at reconciliation "never really went beyond an attempt."

Wife presented her monthly income and expense statement, along with supporting documentation. She estimated her need to be approximately $7,391 per month. Wife confirmed her expected expenses for rent, utilities, health insurance, and her car loan payments. After the marital residence had sold, wife entered into a rent-back agreement for three months. She was paying $2,850 per month in rent but had the option to extend the agreement with an increase in rent to $3,100 per month. Wife was looking for rental properties where the rent was between $2,100 to $3,000 per month because she needed a home with enough space for herself, the parties' eighteen-year-old son, and "two big dogs." Husband presented evidence from James Kanala, a real estate expert, who had searched for available homes in the local area that would allow pets, had at least two bedrooms, and rented for less than $2,100 per month. Kanala found at least sixteen possible properties.

Wife also testified about her efforts to secure employment with benefits. In 2016, the parties had started two businesses, and wife was the sole employee for both.[4] One business was a "dog adventure company" in which wife exercised "off-leash" dogs, but the company "morphed" into a dog boarding company because that was more lucrative. The company had been doing "great" until the COVID-19 pandemic when people "exercised their own dogs and nobody was going on vacation." Although wife worked approximately thirty-five hours per week, she made no profit with the dog business in 2020 and did not anticipate a profit in 2021. Wife started the other company to manage 100-mile and 100-kilometer trail running races. In 2021, the ultramarathon company had received $42,067.50 in registration fees. Wife explained that an "extraordinary amount of money" was necessary to create "a safe race" because there

---

[4] Husband helped with the finances and bookkeeping for the businesses.

were shuttle costs, rental costs, permit costs, food expenses, and equipment expenses. Wife did not anticipate making a profit from the 2021 race. Wife never received a salary or income from either business. Husband was concerned that wife was spending business proceeds on personal expenses.

While this litigation was pending, wife participated in a vocational evaluation, conducted by Scott D. Sevart. Sevart opined that wife had an earning capacity between $36,000 and $50,000 per year and estimated that she should have been able to find a job within four months of the July 2021 evaluation. Sevart recommended that based on her job history and skill set, wife should apply for "administrative assistant and administrative clerk and office manager jobs." Sevart opined that she was "employable."

Wife testified that she had applied for at least seventy jobs and submitted into evidence a spreadsheet reflecting her job search.[5] Wife admitted that she did not have any limitations that prevented her from working. Nevertheless, at the time of the trial, wife remained unemployed.

Husband also testified about his monthly income and expenses. In addition to his annual salary of $114,066 for the civilian job, husband received $2,846 per month in military retirement pay and $3,321.85 per month in VA disability pay. Husband also received monetary gifts from his father from "time to time."[6]

Husband's expenses included rent and life insurance. His rent for his one-bedroom condominium in Reston totaled $1,800 per month. In late 2012 or early 2013, husband obtained the Prudential life insurance policy to cover the mortgages on the two homes that the parties owned at the time. The policy was for term insurance for thirty years. The mortgages had been

---

[5] Sevart opined that wife's job search was a "good start," but he did not believe that she had applied to as many jobs as she could have since he had interviewed her.

[6] Husband's father stopped gifting money to husband after they learned that his bank statements were subject to discovery in the divorce matter.

paid, so husband argued that the need for the Prudential life insurance no longer existed. Wife asked to be named as the sole beneficiary of both of husband's life insurance policies.

At the conclusion of all the evidence, wife moved to strike husband's complaint based on his failure to corroborate his grounds for divorce and date of separation. Husband countered that he had presented evidence about his intent, lease, and separate bank account. The parties then made their closing arguments, and the circuit court took all matters under advisement.

On February 14, 2022, the circuit court issued a letter opinion, in which it acknowledged the parties' stipulations, including that wife would be responsible for the loan payment on her car. The circuit court granted the parties a divorce based on living separate and apart for more than one year. In deciding the date of separation, the circuit court considered whether the "period of 'reconnection' between the parties constituted a reconciliation" and found that the evidence was "on the borderline between a successful reconciliation and a failed attempt at reconciliation." The circuit court compared the evidence of the parties' reconciliation, such as resuming sexual relations, celebrating holidays, going on dates, planning trips together, maintaining finances, and running errands, against the facts of husband never moving back to the former marital residence, wife changing the locks, and wife never moving her personal items to husband's townhome. After considering all the circumstances, the circuit court found that although the parties did not reside together, "the marital cohabitation continued through the parties' period of 'reconnection.'" The circuit court thus found that the parties' date of separation was July 27, 2020, when husband communicated his desire to separate finances because he no longer thought that the marriage was in his best interest.

Next, the circuit court reviewed the equitable distribution factors in Code § 20-107.3(E). It classified, valued, and divided the parties' assets and liabilities. The circuit court noted that

husband had paid wife's car loan during their separation and ordered him to continue to pay it, contrary to the parties' stipulation.

The circuit court then reviewed the spousal support factors from Code § 20-107.1(E). The circuit court considered wife's housing expenses, including her estimated rental costs and the opinion of husband's real estate expert. Contradicting its earlier ruling that husband would be responsible for wife's car loan, the circuit court considered that wife would be responsible for her car loan payment in determining wife's obligations for spousal support purposes. The circuit court also considered the evidence regarding wife's home-based businesses and found that "they did not make a profit." The circuit court found the "unrefuted testimony" was that the expenses associated with the ultramarathon business were "approximately equal" to its income. In addition, the circuit court considered wife's efforts to find a job and found that despite her "good-faith effort," she had not yet secured "employment compatible with her skills."

The circuit court held that husband's monthly spousal support obligation to wife would be $3,505 for "an indefinite period." The circuit court focused on the parties' incomes, the standard of living during the marriage, husband's ability to pay, and wife's need. The circuit court contradicted earlier statements when it noted that wife would have "no car loan as [h]usband will be responsible for that payment."

The circuit court also ordered husband to maintain wife as the sole beneficiary of his life insurance policy through his employment and a fifty percent beneficiary of his Prudential life insurance policy.[7] Finally, the circuit court awarded wife $25,000 in attorney fees. The circuit court directed the parties to prepare a final decree of divorce for entry.

---

[7] The children remained the beneficiary for the other fifty percent of the Prudential life insurance policy.

- 8 -

Upon receiving the circuit court's letter opinion, husband moved to clarify the rulings regarding the responsibility for wife's car loan. Husband emphasized that the parties had agreed that wife would be responsible for her car loan, which the circuit court noted in parts of its letter opinion, yet it also ordered husband to pay the car loan in other parts of the letter opinion.

At a hearing on husband's motion to clarify, the circuit court acknowledged that its letter opinion contained a scrivener's error. Husband asked that the circuit court's order reflect the parties' stipulation that wife would be responsible for her car loan, and he argued against any increases to his spousal support obligation to offset the cost of the loan. Wife then argued that the circuit court's spousal support award did not encompass her obligation to pay the car loan. Wife asked the circuit court to increase her spousal support award "to cover the cost of that car payment"; otherwise, she would be "severely financially prejudice[d]." Husband responded that wife should not get "an additional windfall" for a clerical error.

After reviewing its notes, the circuit court explained that it had intended for husband to pay the car loan. The circuit court offered to increase his monthly spousal support obligation by $500 "until the loan is paid in full" and include a $500 deduction after the loan is paid. Husband responded that "the cleanest way to do it is rather than go through that analysis just have him be responsible for the car." The circuit court found that husband was "agreeing to pay it" and wife accepted that resolution. The parties handwrote the changes to the final decree of divorce, which the circuit court then entered. Husband appeals.

## ANALYSIS

### I. Spousal Support

Husband challenges the circuit court's spousal support award of $3,505 per month to wife. "We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71

Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)); *see also Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (same). "A trial court has broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion." *Nielsen*, 73 Va. App. at 390 (quoting *Robinson v. Robinson*, 50 Va. App. 189, 194 (2007)). "Spousal support determinations typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." *Id.* (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)). "Whether and how much spousal support will be awarded is a matter of discretion for the trial court." *Id.* (quoting *McKee v. McKee*, 52 Va. App. 482, 494 (2008) (*en banc*)).

## A. Wife's Income

The circuit court found that wife had "no income." The circuit court further found that although wife's racing business "brought in $42,067.50 in registration fees in 2021," her "unrefuted testimony" was that the expenses associated with the race were "approximately equal" to the income received from the registration fees.

Relying on language from Code § 20-108.2(C), defining gross income and the "deduction of reasonable business expenses for persons with income from self-employment," husband argues that the circuit court failed to consider wife's "actual gross earnings" from her racing business. Husband contends that wife failed to present "any specific evidence" of expenses to be deducted from the $42,067.50 that the business had received. Rather, she testified about generic expenses for the race, such as shuttle costs, rental costs, permit costs, food expenses, and replacement of equipment, without further explanation or documentation. Husband claims that wife had paid her personal expenses, including her attorney fees, using business proceeds. Husband asserts that the circuit court "should have counted [w]ife's gross receipts as income to meet her financial needs," especially because she offered no proof of her actual expenses.

Code § 20-108.2, however, governs child support, not spousal support. This Court has previously held that "[t]he procedure for calculating child support is somewhat more rigid" than that for spousal support. *Calvert v. Calvert*, 18 Va. App. 781, 784 (1994). "In awarding spousal support, the chancellor . . . is guided by the . . . factors that are set forth in Code § 20-107.1." *Id.* (alterations in original) (quoting *Collier v. Collier*, 2 Va. App. 125, 129 (1986)); *see also Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 435 (2020) ("In determining spousal support, the . . . court must consider all factors contained in Code § 20-107.1." (quoting *Rowe v. Rowe*, 24 Va. App. 123, 139 (1997))). The statutory factors for spousal support do not include a definition of gross income; instead, one factor is "[t]he obligations, needs and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, or whatever nature." Code § 20-107.1(E)(1).

The circuit court considered the statutory factors and found that wife had no income. Wife testified that she had not received a salary from the business previously and did not anticipate receiving any income in 2021. Accordingly, the record supports the circuit court's finding that wife earned no income from the racing business.

### B. Wife's Efforts to Find Employment

Husband argues that the circuit court erred by awarding wife spousal support when she failed to prove that she had "adequately" pursued employment. Husband relies on the vocational expert's opinion that based on her skills and work history, wife should have been able to obtain a job, by November 2021, earning between $36,000 and $50,000 per year.

"Under appropriate circumstances, a trial court may impute income to a spouse when calculating a support award." *Collins v. Leeds*, 69 Va. App. 1, 8 (2018). "The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." *Id.* at 9 (quoting

- 11 -

*McKee*, 52 Va. App. at 489). The circuit court considered the vocational expert's testimony, as well as wife's testimony that she had applied for seventy-one jobs. It rejected the expert's opinion that the "seventy-one applications over a six-month period [was] not very many." "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." *Sobol*, 74 Va. App. at 272 (quoting *Anderson v. Anderson*, 29 Va. App. 673 (1999)).

After hearing all the evidence and argument, the circuit court found that wife had "been making a good-faith effort to find employment compatible with her skills but ha[d] not yet succeeded." Although wife had developed "event planning and business management skills through her dog boarding and ultramarathon businesses," the circuit court also considered that wife had "only a high school diploma and ha[d] no recent work experience." The record supports the circuit court's finding that wife was making a "good-faith effort" to secure employment, as well as its ruling not to impute income to her.

### C. Wife's Car Loan Payment

Husband argues that the circuit court erred when it ordered him to pay wife's car loan payment despite the parties' agreement that she would be responsible for the loan. Husband contends that he was "coerced" into accepting responsibility for the loan payment to avoid a greater spousal support obligation.

In its letter opinion, the circuit court acknowledged the parties' stipulations, including that wife would be responsible for her car loan payment. Nonetheless, it erroneously found in the equitable distribution and spousal support rulings that husband would be responsible for the car loan payment.

When husband sought clarification of the circuit court's ruling, the circuit court acknowledged that there was a scrivener's error in its letter opinion and confirmed the parties'

- 12 -

stipulation. The circuit court also acknowledged that it could not change the parties' agreement. After reviewing the parties' income and expense statements, including wife's income and expense statement that included the car loan payment, the circuit court had intended for the spousal support award to include the amount of the car loan. It suggested increasing husband's support obligation by $500 until the loan was paid in full, and then deducting $500 once the loan was paid. Husband, however, took the position that "the cleanest way" to accomplish the circuit court's intent was to make "him be responsible for the car." Wife agreed to that procedure.

Husband now argues, however, that the circuit court did not follow the parties' stipulation that wife would be responsible for the car loan. Husband's arguments to the contrary notwithstanding, there is no evidence that he was "coerced" into paying the car loan. In fact, he suggested that the best approach was to "just have him be responsible for the car." Having suggested, and certainly acquiesced to, this resolution, husband cannot now challenge the ruling. Husband is not "permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with his [sworn] representations." *Asgari v. Asgari*, 33 Va. App. 393, 403 (2000); *see also Cody v. Commonwealth*, 68 Va. App. 638, 665 (2018) ("A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006))).

## D. Wife's Housing Expenses

Husband next argues that the circuit court erred by considering wife's "excessive" housing expenses which were "nearly double the reasonable cost of housing estimated by husband's expert." At the time of the circuit court hearing, the former marital residence had sold, and wife was paying $2,800 per month under a rent-back agreement. Wife estimated her monthly housing expenses would be between $2,100 and $3,000 for a home with enough room

for herself, the parties' eighteen-year-old son, and their two large dogs. Husband presented evidence from a real estate expert that there were suitable housing options available in the area for rent between $1,300 and $2,100 per month. Husband asserts that the circuit court should have placed more weight on the expert witness' testimony, rather than wife's "guestimate of her housing expense."

Husband admits that he did not preserve this argument for appeal but asks this Court to consider it under the good cause exception of Rule 5A:18.[8] Husband contends that he did not raise it during the hearing on his motion to clarify because the circuit court had "veered to a new idea without any notice" to husband of altering his spousal support obligation because of the scrivener's error in the letter opinion. Husband was "focused on the stipulation concerning the car loan and did not anticipate the reconsideration of the spousal support award." Husband contends that he did not realize until he was "preparing this appeal" that the circuit court's spousal support award "neatly added to within a few dollars" of wife's estimated housing expense of $2,800 and health insurance expense of $640. Husband acknowledges that he did not consider his objections and arguments regarding the housing expense "until after the period

---

[8] In his opening brief, husband acknowledged that this argument was not preserved below.

> Only while preparing this appeal did [h]usband's trial counsel finally observe that the sum of $3,505 from the guidelines the [c]ourt focused on neatly added to within a few dollars of two figures on [w]ife's monthly income/expense exhibit . . . . This observation, by [h]usband's trial counsel, did not occur until after the period within which the parties could submit motions to seek reconsideration of the [c]ourt's ruling. Husband's counsel would have objected to that formulation had he known.

While husband later suggested in his reply brief that the issue was preserved, his initial concession is more accurate.

within which the parties could submit motions to seek reconsideration of the [circuit court's] ruling."

"The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)); *see also Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022) (same). We find that the good cause exception does not apply here, and, in any event, the trial court's findings were fully consistent with credible evidence.

## II. Date of Separation

Husband argues that the circuit court erred when it agreed with wife that the parties' date of separation was July 27, 2020, and not September 22, 2019. He asserts that it is "not possible for a couple to 'cohabit' if parties have separated, continue thereafter to live in separate houses, [and] never resume living in the same house." Husband emphasizes that wife changed the door locks and the garage code at the former marital residence. Husband contends that wife "cannot say that the parties reconciled and bar his return to the home."

A court may grant a divorce "[o]n the application of either party if and when they have lived separate and apart without any cohabitation and without interruption for one year." Code § 20-91(A)(9)(a). A separation must be "coupled with an intention on the part of at least one of the parties to live separate and apart permanently, and . . . this intention must be shown to have been present at the beginning" of the separation period. *Andrews v. Creacey*, 56 Va. App. 606, 618 (2010) (quoting *Hooker v. Hooker*, 215 Va. 415, 417 (1975)). "Determination of whether one or both of the parties formed the intent to remain permanently separate and apart is a question to be determined by the trial court as the fact finder." *Friedman v. Smith*, 68 Va. App.

529, 543 (2018). "A factual determination cannot be reversed on appeal unless it is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Congdon*, 40 Va. App. at 261).

"The public policy of the Commonwealth of Virginia is to encourage reconciliation of separated spouses and to preserve marriage." *Jacobsen v. Jacobsen*, 41 Va. App. 582, 589-90 (2003). "A valid reconciliation requires a mutual intention to resume the marital relationship absent bad faith." *Id.* at 591. "Reconciliation must exhibit proof that the parties intend to live together as husband and wife and take up their respective roles in the relationship." *Id.* at 590. The court considers "a couple's married life as it existed before they separated." *Id.*

After considering "all the circumstances," the circuit court found that "the marital cohabitation continued through the parties' period of 'reconnection.'" Although the parties did not live together, the circuit court found that they "carr[ied] out the mutual responsibilities of the marital relationship." *Petachenko v. Petachenko*, 232 Va. 296, 299 (1986). The circuit court considered the parties' text messages from November 2019 through June 2020, along with the testimony about wife running errands for husband and cooking for him. Both husband and wife admitted to engaging in sexual relations, going on dates, celebrating their anniversary "in public," and planning "expensive trips" together. Although husband never moved back into the former marital residence and wife changed the locks, they held themselves out as a married couple, as depicted in photographs of them "publicly displaying affection." Moreover, the parties maintained joint bank accounts and husband continued to pay the household bills. The circuit court found that the parties did not "fully and permanently" separate until husband sent wife the email on July 27, 2020, stating that the marriage was no longer in his best interest and asking to separate their finances. We find that the totality of the evidence supports the circuit court's findings.

## III. Life Insurance

Husband argues that the circuit court erred by requiring him to maintain two life insurance policies and name the wife as a beneficiary of each policy. Husband offered to maintain wife as the beneficiary of his work life insurance policy but sought to cancel the Prudential life insurance policy. He asserts that the purpose of the Prudential life insurance policy was to cover the mortgages on homes that the parties no longer owned; the policy was not necessary to protect wife against the loss of spousal support. He emphasizes that wife will receive half of the marital share of the parties' assets, including his retirement. Husband contends that the life insurance policy through his employment "should be more than enough to protect against [w]ife's potential loss of spousal support" at his death, and the Prudential life insurance policy is "completely unnecessary for this purpose."

Code § 20-107.1:1(A) authorizes a trial court "to order that a divorcing spouse designate the former spouse as a beneficiary on a life insurance policy if two conditions are met." *Sobol*, 74 Va. App. at 286. "First, the life insurance policy must already be in existence for the statute authorizes the trial court to order the party to 'maintain an[ ] existing life insurance policy on the insured party's life that was purchased during the marriage[.]'" *Id.* (alterations in original) (quoting Code § 20-107.1:1(A)(a)). Second, "the trial court may order that the payee spouse be designated the beneficiary only if the '*the payee has been designated as a beneficiary of such policy during the marriage*[.]'" *Id.* (alteration in original) (quoting Code § 20-107.1:1(A)).

Thus, consistent with the requirements of Code § 20-107.1:1(A), the evidence established that both life insurance policies were purchased during the marriage and wife was the named beneficiary of both policies. Consistent with Code § 20-107.1:1(A), the circuit court's order requires husband to "maintain" his life insurance policy through his employment and name wife as the sole beneficiary. In addition, the circuit court's order requires husband to "maintain" the

- 17 -

Prudential life insurance policy and name wife as a fifty percent beneficiary, with the parties'

children "sharing" the other fifty percent. Finally, the circuit court's order requiring husband to

maintain the policies "for so long as he has a statutory obligation to pay spousal support" to wife

is consistent with Code § 20-107.1:1.

Although husband argued that the Prudential life insurance policy was not necessary to

provide for wife, the circuit court found that fifty percent of the Prudential life insurance policy

was "adequate to provide for wife," considering that she would be receiving a portion of his

retirement accounts as well. Because the circuit court's order requiring husband to maintain the

existing life insurance policies he had during the marriage is wholly consistent with Code

§ 20-107.1:1, we affirm the circuit court's judgment.

IV. Appellate Attorney Fees and Costs

Both parties requested an award of attorney fees and costs incurred on appeal. *See*

*O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). "The decision of whether to award

attorney's fees and costs incurred on appeal is discretionary." *Koons v. Crane*, 72 Va. App. 720,

742 (2021) (quoting *Friedman*, 68 Va. App. at 545). "Since this litigation 'addressed appropriate

and substantial issues,' and 'neither party generated unnecessary delay or expense in pursuit of

its interests,'" we deny both parties' request for an award of attorney fees and costs incurred on

appeal. *Porter v. Porter*, 69 Va. App. 167, 176 (2018) (quoting *Estate of Hackler v. Hackler*, 44

Va. App. 51, 75 (2004)); *see also* Rule 5A:30(b).

CONCLUSION

For the foregoing reasons, we find that the circuit court did not err in awarding wife

$3,505 per month in spousal support, finding that the parties' date of separation was July 27,

2020, and ordering husband to maintain both life insurance policies.  The circuit court's judgment is affirmed.

*Affirmed.*